Filed 1/29/18

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| MIKE HERNANDEZ et al., | ) | |
| | ) | |
| Plaintiffs and Respondents; | ) | |
| | ) | |
| FRANCESCA MULLER, | ) | |
| | ) | |
| Plaintiff and Appellant, | ) | S233983 |
| v. | ) | |
| | ) | Ct.App. 4/1 D067091 |
| RESTORATION HARDWARE, INC., | ) | |
| | ) | San Diego County |
| Defendant and Respondent. | ) | Super. Ct. No. |
| | ) | 37-2008-00094395- |
| | ) | CU-BT-CTL |
| | ) | |

Under Code of Civil Procedure[1] section 902, "[a]ny party aggrieved" may appeal a judgment. "It is generally held, however, that only parties of record may appeal; consequently one who is denied the right to intervene in an action ordinarily may not appeal from a judgment subsequently entered in the case. [Citations.] Instead, he may appeal from the order denying intervention." (*County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 736 (*Carleson*).) The issue we address is when does an unnamed class action member become a party of record with the right to appeal a class action settlement or judgment under section 902? We address this issue in the context of Justice Traynor's 75-year-old decision, which held that unnamed class members do not become parties of record under

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise stated.

SEE CONCURRING OPINION.

section 902 with the right to appeal the class settlement, judgment, or attorney fees award unless they formally intervene in the class litigation before the action is final. (*Eggert v. Pac. States S. & L. Co.* (1942) 20 Cal.2d 199, 201 (*Eggert*).) We conclude the Court of Appeal correctly relied on *Eggert* to hold that unnamed class members may not appeal a class judgment, settlement, or attorney fees award unless they intervene in the action. (*Ibid.*)

## FACTUAL AND PROCEDURAL BACKGROUND

In 2008, plaintiff Michael Hernandez filed a class action law suit against defendant Restoration Hardware, Inc. (RHI), alleging the company committed numerous violations of the Song-Beverly Credit Card Act (the Act) when it asked for and recorded ZIP codes from customers who used credit cards in making RHI purchases. (Civ. Code, § 1747.08.) After several years of litigation, the court certified the case as a class action and appointed plaintiffs Mike Hernandez and Amanda Georgino as class representatives (collectively Representatives). The court also appointed the Patterson Law Group and Stonebarger Law as class counsel.

In June 2013, a notice to potential class members advised them of the pending class action and presented them with the following options: (1) they could remain as part of the class and be bound by the judgment, or (2) they could exclude themselves from the class (opt out) and not be bound by the judgment. (Cal. Rules of Court, rule 3.766.) The notice also advised the potential class members that if they elected to remain in the class, they could appear in court through class counsel. Francesca Muller (Muller), an unnamed class member and the appellant here, received the June 2013 class action notice, but did not join the class as a party or opt out at that time. Instead, Muller's attorney filed a notice of an appearance on her behalf.

2

Following a bench trial, the court found RHI liable for "as many as" 1,213,745 violations of the Act, set a penalty of $30 per violation, and rendered a judgment against RHI in the amount of $36,412,350. The court ordered the parties to meet and confer on the claims process and procedures for distributing the award, "including a means for RHI to challenge the accuracy of any recorded ZIP codes."

The parties met and agreed that the judgment of $36,412,350 was based on the maximum number of violations at $30 per violation, and that sum would be treated as a common fund inclusive of any attorney fees, costs, and class representative enhancements. RHI waived its right to appeal the judgment. Muller never moved to intervene during the bench trial on the merits by filing a formal complaint in intervention under section 387.

After conducting negotiations with RHI, Representatives then moved for attorney fees "equivalent to 25 percent of the total judgment recovered for the class." The trial court requested that Representatives submit a supplemental motion for attorney fees with a "lodestar calculation" as a cross-check on the fee request. Representatives calculated the fee amount using a lodestar calculation and multiplier that showed class counsel spent over 3,500 hours on the litigation and incurred advanced costs and fees of nearly $2.7 million. Representatives also submitted reasons for supporting "application of a 'multiplier' to the lodestar calculation." RHI agreed not to oppose the requested fee award if class counsel sought no more than 25 percent of the total recovery. (See *Ruiz v. California State Automobile Assn. Inter-Insurance Bureau* (2013) 222 Cal.App.4th 596, 598 [allowing counsel for plaintiff class to seek attorney fees award with defendant's assurance not to oppose fee application if amount is less than or equal to specified dollar amount].)

3

Muller was served with the attorney fees motion and a copy of class counsel's percentage of the common fund calculation, but did not object to the proposed total fee award. Instead, on August 29, 2014, she filed a "Request for Clarification" and asked to appear telephonically at the settlement fairness hearing on the fee proposal. The request stated that "[t]he parties' pleadings do not indicate that class members were notified of the settlement of the attorney fees issue and of the hearing on September 5, 2014, to approve [c]lass [c]ounsel's fee request." The trial court permitted Muller to file her request.

Before its scheduled fairness hearing on the proposed class attorney fees settlement, the court issued its tentative ruling on the fee request, determining that (1) California law permits a percentage award in common fund cases, (2) courts use a 25 percent fee figure as a "starting benchmark," and (3) a fee at or above the benchmark was appropriate because of the risks counsel incurred when they brought the action and the result they obtained in the litigation. All parties and Muller's attorney received a copy of the tentative ruling by e-mail.

On September 5, 2014, the court held a fairness hearing on Representatives' attorney fees application. Muller, who appeared telephonically through her counsel, objected to the court's consideration of the proposed fee award. (See Cal. Rules of Court, rule 3.769(f) [allows unnamed class members to appear and object to settlement but is silent regarding any right to appeal denial of objections].) Her principal claim was that the fee award violated class action procedure because class members were not given notice of their right to appear and comment on the proposed attorney fees settlement following the bench trial on the merits. The court noted, and counsel acknowledged, that there was no authority to support the claim that the court should have given the class additional notice (besides the initial class certification notice) of the subsequent settlement fairness hearing on the proposed attorney fees award. Muller also claimed that the

4

court was required to calculate the fee award using the "lodestar multiplier approach," rather than a "percentage of the fund approach," but did not argue the court's tentative ruling rendered the fee award excessive.

After the hearing on the settlement of the proposed fee award, the court issued a "Second Amended Minute Order" denying Muller's request for clarification and approving the fee and costs requests. On September 29, the court filed its final judgment that tracked the parties' claims process and granted class counsel's requested attorney fees award. Class counsel then distributed a notice of the judgment to class members, including instructions for the claims process.

Muller did not file a section 663 motion to vacate the judgment; instead she filed a notice of appeal. She limited her appeal to the attorney fees award, renewing her claim that in failing to provide class members with notice of the fee negotiations and proposed settlement with RHI, Representatives and class counsel breached their fiduciary duties to the class. Muller also reiterated her claim that the court should have used the lodestar multiplier approach to calculate the fee award.

Representatives challenged Muller's claims on their merits. They also challenged Muller's right to file her appeal because she was neither a "party" nor "aggrieved" by the trial court's alleged erroneous judgment as required under section 902 and our decision in *Eggert*, *supra*, 20 Cal.2d at page 201. The court dismissed Muller's appeal for lack of standing, concluding it was bound to follow *Eggert* under *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 (decisions of state supreme court are binding on all other state courts; courts of inferior jurisdiction may not overrule higher court decisions). The Court of Appeal also concluded that Muller cited no persuasive authority to support her argument that changes to *federal* procedural rules for managing class actions in

5

federal trials undermine the analysis of *state* statutes limiting who may appeal. We granted Muller's petition for review on the right to appeal issue only.

## DISCUSSION

The class action is codified in section 382, and its procedural rules for class certification, notice, settlement, and judgment appear in our California Rules of Court, rules 3.760-3.771. The action is a product of the court's equitable jurisdiction that rests on considerations of necessity, convenience, and the belief that in large cases, the class action will prevent a failure of justice. (*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 458.) Case law imposes fiduciary duties on the trial courts, class counsel, and class representatives, who must ensure the action proceeds in the class members' best interest. The class action structure relieves the unnamed class members of the burden of participating in the action. (*Earley v. Superior Court* (2000) 79 Cal.App.4th 1420, 1434.) Unnamed parties may be considered "parties" for the limited purpose of discovery, but those same unnamed parties are not considered "parties" to the litigation. (*National Solar Equipment Owners' Assn. v. Grumman Corp.* (1991) 235 Cal.App.3d 1273, 1282 [unnamed class members are not the same as named parties].)

California Rules of Court, rule 3.769 requires class representatives to notify class members of a pending settlement on the merits and provide them with the opportunity to object at the final settlement fairness hearing. Rule 3.771(b) requires that notice of a pending judgment be provided to class members, and rule 3.769(f) provides that "notice of the final approval hearing must be given to the class members in the manner specified by the court. The notice must contain an explanation of the proposed settlement and procedures for class members to follow in filing written objections to it and in arranging to appear at the settlement hearing and state any objections to the proposed settlement." The rules also state

6

that "[b]efore final approval, the court must conduct an inquiry into the fairness of the proposed settlement." (Cal. Rules of Court, rule 3.769(g).)

The right to appeal judgments in state civil actions, including class actions, is entirely statutory, so long as the Legislature does not " ' "substantially impair the constitutional powers of the courts, or practically defeat their exercise." ' " (*Powers v. City of Richmond* (1995) 10 Cal.4th 85, 110.) Unnamed class members may become parties of record to class actions in one of two generally acceptable ways. First, they may file a timely complaint in intervention before final judgment that sets forth the grounds upon which the intervention rests. (§ 387.) If parties seek permissive intervention under section 387, subdivision (a), they must show they have an interest in the litigation. For intervention as a matter of right under section 387, subdivision (b), intervenors must show they are class members whose interests are not adequately represented by the existing parties. The complaint in intervention is "filed by leave of the court and served upon the parties to the action or proceeding who have not appeared in the same manner as upon the commencement of an original action, and upon the attorneys of the parties who have appeared, or upon the party if he has appeared without an attorney . . . ." (§ 387, subd. (a); see *Klinghoffer v. Barasch* (1970) 4 Cal.App.3d 258, 261.) The fact that section 387 allows for a "timely" application means that intervention after a judgment is possible. (*Mallick v. Superior Court* (1979) 89 Cal.App.3d 434, 437 [intervention not barred by fact that judgment was rendered]; see 4 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 224, pp. 298-299.)

Second, although not a method of intervention, an unnamed party to the action may also become a named party by filing an appealable motion to set aside and vacate the class judgment under section 663. (*Eggert*, *supra*, 20 Cal.2d at p. 201; *Carleson*, *supra*, 5 Cal.3d at pp. 736, 738 [one who is legally "aggrieved" by judgment may become "party of record" with the right to appeal by moving to

7

vacate judgment for "incorrect legal conclusion" or "erroneous judgment upon the facts" under § 663 before entry of judgment]; see § 663a, subd. (a)(1); *In re Marriage of Burwell* (2013) 221 Cal.App.4th 1, 13-14 [interpreting *Carleson* rule to apply to any motion to vacate or set aside judgment].)

Representatives assert that because Muller was an unnamed class member who never exercised her right to intervene during the class action by filing a complaint in intervention under section 387, she never became a party of record and the court should dismiss her appeal under *Eggert*, *supra*, 20 Cal.2d 199, a case that the Court of Appeal believed stood "on 'all fours' " with the present matter.

Muller, on the other hand, urges us to overrule *Eggert* as a "remnant of a bygone era," that is out of step with current class action practice. She repeats her Court of Appeal argument that *Eggert*'s bright-line rule has been superseded by several more recent Court of Appeal decisions that were influenced by 1966 amendments to rule 23 of the Federal Rules of Civil Procedure (28 U.S.C.) (Rule 23), which created the federal opt-out damages class action and "led to greatly expanded use of the device." (Bone & Evans, *Class Certification and the Substantive Merits* (2002) 51 Duke L.J. 1251, 1260.) These same amendments encouraged a rise in settlement class actions. (See Franklin, *The Mass Tort Defendants Strike Back: Are Settlement Class Actions a Collusive Threat or Just a Phantom Menace?* (2000) 53 Stan. L.Rev. 163, 167-172 [discussing rise of settlement class actions].) Muller asserts that Rule 23 is persuasive authority that courts should not require unnamed class members to formally intervene in the underlying action to gain the right to appeal a trial court's order concerning the unnamed class members' objections to the proposed settlement. We disagree and find that *Eggert* remains good law.

In *Eggert*, the plaintiff, as holder of a "Fidelity Definite Term Certificate" initiated a class action on behalf of himself and approximately 1,500 certificate

holders against defendant in the amount of over $1.8 million. (*Eggert*, *supra*, 20 Cal.2d at pp. 199-200.) The complaint included a request for attorney fees. (*Id.* at p. 200.) The court awarded judgment to the plaintiffs, but reserved jurisdiction to determine the amount of fees owed. (*Ibid.*) The complaint incorporated by reference an exhibit containing the names of the outstanding certificate holders as well as each certificate's number and face value. The names of certificate holders Jessie C. Kelley and Dorothy C. Given (the objectors) appeared in the exhibit. (*Ibid.*)

The court appointed a receiver to facilitate payment of the judgment and directed both the plaintiff and interested persons to show cause why it should not order fixed attorney fees. (*Eggert*, *supra*, 20 Cal.2d at p. 200.) Notice of the order was published daily until the return date. (*Ibid.*) At the hearing on the plaintiff's motion for the receiver to pay the judgment after deducting the attorney fees, an attorney representing the objectors appeared and contested the petition's attorney fees provision. (*Ibid.*) After the court granted the petition in the plaintiff's favor, both objectors filed an appeal on behalf of themselves and all other certificate holders who were without legal representation. (*Ibid.*) They also petitioned this court for a writ of supersedeas, hoping to stay the trial court's order to pay the attorney fees. (*Ibid.*)

*Eggert* dismissed the objectors' appeal and denied their application for a writ of supersedeas to stay the execution of the trial court's fee order. (*Eggert*, *supra*, 20 Cal.2d at p. 200.) Noting that "it is a settled rule of practice in this state that only a party to the record can appeal," *Eggert* refused to grant party status to the objectors (who were never named as parties of record to the class action) even though their names and interest in the action were included in the exhibit to the complaint, and their attorney had appeared at the hearing on petition for payment of attorney fees to object to the fee payment. (*Id.* at p. 201.) As *Eggert* observed,

9

the "[a]ppellants had ample opportunity even after the court had made its orders to become parties of record by moving to vacate the orders to which they objected. They could then have appealed from the order denying the motion." (*Ibid.*)

Although *Eggert*'s analysis provides the court with sound guidance for interpreting current section 902 and the right to appeal a final judgment, Muller asks us to overrule *Eggert* and adopt the view of more recent Court of Appeal decisions that incorporate amended Rule 23, to give unnamed class member objectors who informally object to settlement during fairness hearings the right to appeal their overruled objections. (See, e.g., *Consumer Cause, Inc. v. Mrs. Gooch's Natural Food Markets, Inc.* (2005) 127 Cal.App.4th 387, 395-396 [acknowledging *Eggert*, but holding that class member who appears at fairness hearing and objects to settlement has a right to appeal, even though that member did not intervene in the action]; see also *Trotsky v. Los Angeles Fed. Sav. & Loan Assn.* (1975) 48 Cal.App.3d 134, 139 (*Trotsky*) [member of affected class whose objections to settlement were overruled is aggrieved party with right to appeal]; *Rebney v. Wells Fargo Bank* (1990) 220 Cal.App.3d 1117, 1128-1132 [relying on *Trotsky*]; *Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 253 [following *Trotsky*, holding that unnamed class members who appeared at final fairness hearing and objected to proposed settlement have standing to appeal]; *Roos v. Honeywell Internat., Inc.* (2015) 241 Cal.App.4th 1472, 1486 [relying on *Wershba* for objector standing to appeal, but denying appeal to objectors who could not establish class membership].)[2]

---

[2]     Muller asked us to judicially notice several unpublished Court of Appeal opinions that adopted the same rule. With certain exceptions, not applicable here, the Rules of Court generally prohibit us from noticing unpublished opinions. (Cal. Rules of Court, rule 8.1115(a).) We therefore declined to grant her request.

As the Court of Appeal observed, none of the cases on which Muller relies "made any effort to reconcile their conclusions with *Eggert*." But instead, their logic is derived from *Trotsky*, *supra*, 48 Cal.App.3d at page 139, which was decided after the 1966 amendments to Rule 23 and addressed the right of an unnamed class member to object to a settlement and prosecute an appeal. *Trotsky* held that an unnamed class member whose objections to settlement were overruled became a "party aggrieved" and could appeal the trial court's ruling as soon as she filed her objections to the settlement. (*Ibid.*) The court reasoned that " '[i]t is possible that, within a class, a group of small claimants might be unfavorably treated by the terms of a proposed settlement. For them, the option to join is in reality no option at all' " because they could be forced to accept either nothing or an unfair settlement. (*Id.* at p. 139; *id.* at p. 140.)

As the Court of Appeal noted, in focusing primarily on the "aggrieved" element of section 902, *Trotsky* failed to examine the statute's additional requirement that the objector must also be a "party" of record to the class action to gain the right to appeal the trial court's judgment. The Court of Appeal also faulted *Trotsky* for never attempting to reconcile its conclusion with *Eggert*'s rule that an objector must be an aggrieved party to gain the right to appeal an order or judgment in a class action. (*Trotsky*, *supra*, 48 Cal.App.3d at p. 139.) We agree with the Court of Appeal, and find that *Trotsky*'s failure to address section 902's requirements for the right to appeal a settlement, or to distinguish or otherwise reconcile its holding with *Eggert*, renders the opinion unpersuasive and we disapprove it and its progeny.

Muller contends that even if *Trotsky* misinterpreted section 902's rules to establish the right to appeal a trial court's dismissal of informal objections to a settlement, the United States Supreme Court rejected the requirement of intervention in a class action filed in the United States District Court of Maryland

11

to determine liability under the federal Employee Retirement Income Security Act for a retirement plan's proposal to amend a cost of living adjustment for active and retired workers. (*Devlin v. Scardelletti* (2002) 536 U.S. 1, 14 (*Devlin*).) *Devlin* held that unnamed class members of a mandatory class action (with no option to opt out), who make timely objections to the class settlement at the fairness hearing have a right to appeal without first intervening in the action because they are bound by the settlement. (*Ibid.*) A motion to intervene under rule 24(a) of the Federal Rules of Civil Procedure (28 U.S.C.) (Rule 24(a)) would serve the same purpose as an objection in district court. (*Devlin*, at p. 11.) The majority found "most important" the fact that "petitioner had no ability to opt out of the settlement, see Fed. Rule Civ. Proc. 23(b)(1), [and] appealing the approval of the settlement [was] petitioner's only means of protecting himself from being bound by a disposition of his rights he finds unacceptable and that a reviewing court might find inadequate." (*Devlin*, *supra*, 536 U.S. at pp. 10-11.)

Federal and state courts are far from uniform on whether *Devlin*'s rule even applies to all class proceedings, including opt-out class actions. Some courts limit *Devlin* to cases in which the unnamed class members had no ability to opt out of the class and either objected or intervened during the settlement proceedings. (See, e.g., *Day v. Persels & Associates*, *LLC* (11th Cir. 2013) 729 F.3d 1309, 1318-1319, 1321 [distinguishing *Devlin* to hold that unnamed absent class members who do not opt out are not "parties" to the litigation under 28 U.S.C. § 636(b), (c), and noting three ways to obtain party status, including intervention under Rule 24(a)]; *Barnhill v. Florida Microsoft Anti-Trust Litigation* (Fla.Ct.App. 2005) 905 So.2d 195, 199 [finding "no consensus" on the scope of *Devlin* and agreeing with cases limiting *Devlin*'s applicability to mandatory class actions]; *Ballard v. Advance America* (Ark. 2002) 79 S.W.3d 835, 837 [distinguishing *Devlin* as federal law, not Arkansas law, and holding nonparty objectors could not

appeal settlement without first seeking to intervene]; *Snell v. Allianz Life Ins. Co. of North America* (8th Cir. 2003) 327 F.3d 665, 670, fn. 2 [*Devlin* does not apply to opt-out class action in which unnamed class member did not object to settlement in district court]; *In re General American Life Ins. Co. Sales Practices Litigation* (8th Cir. 2002) 302 F.3d 799, 800 [dictum noting a limited reading of *Devlin* "has considerable merit"].)

Other federal and state courts hold that *Devlin* applies to all class actions, including opt-out actions filed under Rule 23(b)(3) (See, e.g., *Bachman v. A.G. Edwards, Inc.* (Mo.Ct.App. 2011) 344 S.W.3d 260, 265, fn. 3 [included dictum stating *Devlin* applies to all class actions, though not applying federal standard because objector timely intervened under state law]; *Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund* (1st Cir. 2009) 582 F.3d 30, 39-40 [claiming, without discussing contrary authority, that "weight of authority" finds *Devlin* applies to all class actions]; *Fidel v. Farley* (6th Cir. 2008) 534 F.3d 508, 512-513 [applying *Devlin* to Rule 23(b)(3) class actions]; *In re Integra Realty Resources, Inc.* (10th Cir. 2004) 354 F.3d 1246 [unnamed class members who do not opt out but seek to challenge settlement on appeal must first object in district court or file motion to intervene under Rule 24(a)]; *Churchill Village, LLC. v. Gen. Elec.* (9th Cir. 2004) 361 F.3d 566, 572-573 [finding no practical difference between mandatory and opt-out class actions which bind objectors for purposes of deciding federal question]; *Rivera-Platte v. First Colony Life Ins. Co.* (N.M.Ct.App. 2007) 173 P.3d 765, 773 [agreeing with *Churchill* that *Devlin* extends to opt-out class actions].) The split of authority illustrates the unsettled nature of the law in federal (and state) courts.

We are not persuaded by the courts that have adopted *Devlin* as their rule. Our state common law, legislation, and procedural rules of court differ significantly from the federal common law and procedural rules. (Compare Rules

13

23, 24(a) [class members may appeal settlement as long as they provide notice to the court that they object to settlement (Rule 23(h)) or intervene under Rule 24(a)] with *Eggert*, *supra*, 20 Cal.2d at p. 201, and Cal. Rules of Court, rule 3.769(f) [silent on class member right to appeal].)  Potential class members in our state can opt out of the class action litigation and pursue their own litigation against the same class defendant, timely intervene in the action or proceeding, or move to set aside the judgment.  (Cal. Rules of Court, rule 3.766; see §§ 387, 663.) As the Court of Appeal emphasized here, our Legislature has chosen to continue *Eggert*'s rule despite changes in federal class action rules.

Muller alternatively claims that because a class settlement is generally binding on all class members (assuming class representatives have complied with due process regarding notice and adequate representation), we should create an exception to *Eggert* that allows members to appeal their denied objections to settlement without formal intervention.  (See *DeLeon v. Verizon Wireless, LLC* (2012) 207 Cal.App.4th 800, 807, fn. 3 [res judicata bars settling class members from thereafter seeking relief].)  We decline to do so.  Following *Eggert* and requiring intervention does not discourage unnamed class members from filing a meritorious appeal.  Rather, it continues a manageable process under a bright-line rule that promotes judicial economy by providing clear notice of a timely intent to challenge the class representative's settlement action.  Formal intervention also enables the trial court to review the motion to intervene in a timely manner. Muller had the opportunity to intervene in the trial court proceedings but chose not to do so.  Instead, she made a strategic choice to wait and see if she agreed with the settlement amount and attorney fees agreement.  By filing an appeal without first intervening in the action however, Muller never became an "aggrieved party"

14

of record to the action as our law requires.  (§ 902; *Eggert*, *supra*, 20 Cal.2d 450.)**3**

Several policy considerations provide additional support for *Eggert*'s continued viability.  Meritless objections "can disrupt settlements by requiring class counsel to expend resources fighting appeals, and, more importantly, delaying the point at which settlements become final."  (Fitzpatrick, *The End of Objector Blackmail?* (2009) 62 Vand. L.Rev. 1623, 1634.)  These same objectors who appear and object to proceedings in different class actions—also known as "professional objectors," are thought to harm the class members whose interests they claim to protect.  "First, professional objectors' almost invariably groundless objections delay the provision of relief to class members who, in most instances, have already waited years for resolution.  Second, by feeding off the fees earned by class counsel who took the risk of suing defendants on a purely contingent basis, as is the normal practice in class actions, professional objectors create a disincentive for class counsel to take on such risky matters.  That disincentive clashes with the public interest, repeatedly recognized by courts, to incentivize class counsel to handle such cases."  (Greenberg, *Keeping the Flies out of the Ointment:  Restricting Objectors to Class Action Settlements* (2010) 84 St. John's L.Rev. 949, 951.)

Additionally, class representatives do not proceed in a vacuum that protects their interests only.  Our case law imposes strict fiduciary responsibilities on class representatives and class counsel to ensure the litigation proceeds in the best interests of all unnamed class members.  (See, e.g., *Laffitte v. Robert Half Internat., Inc.* (2016) 1 Cal.5th 480, 510 [trial court acts as fiduciary " 'guarding

---

**3**      The fact that Federal Rules of Civil Procedure, rule 23(h), added in 2003, grants federal class members notice and a right to object to class counsel fee requests does not undermine *Eggert*'s persuasive authority.

15

the rights of absent class members' "]; *Kullar v. Foot Locker Retail, Inc.* (2008) 168 Cal.App.4th 116, 130 [trial court must conduct independent and objective analysis "to protect the interests of absent class members"; *La Sala v. American Sav. & Loan Assn.* (1971) 5 Cal.3d 864, 871 [class representatives act as fiduciaries for absent class members].) Objectors who do not formally intervene have no such duty to the class.

Muller also fails to justify her request that we overrule *Eggert* under the well-established jurisprudential rule of stare decisis that we follow prior applicable precedent even though the case, if considered anew, might be decided differently. This is so parties can "regulate their conduct and enter into relationships with reasonable assurance of the governing rules of law." (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 481, at p. 541, and cases cited; *id.* at p. 540.) Although the doctrine is flexible because it permits this court to reconsider, and ultimately depart from, our own precedent when changes or developments in the law recommend it (see *id.*, § 482, pp. 541-543), we conclude that Muller presents no persuasive reason for us to reconsider *Eggert*'s rule, much less depart from it. The contours of section 902 are clear, and *Eggert*'s bright-line rule is consistent with the statute. Muller will be bound by the *Hernandez* class judgment as an unnamed class member who never became a party to the action (§ 902).

16

## CONCLUSION

The Legislature has limited the right of unnamed class members to appeal by expressly requiring that class action objectors who wish to appeal be parties of record who have been aggrieved by the court's decision. (§ 902.) Had Muller properly intervened in the class action or filed a section 663 motion to vacate the judgment, and been denied relief, she would have had a clear path to challenge the attorney fees award (or settlement or judgment) on appeal. Muller offers no persuasive reason why we should create an exception to our long-standing rule, or overrule or distinguish *Eggert*. For these reasons, we affirm the Court of Appeal judgment.[4]

**CHIN, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**CORRIGAN, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**NICHOLSON, J.\***

_____
\* Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

---

[4] We disapprove *Trotsky v. Los Angeles Fed. Sav. & Loan Assn.*, *supra*, 48 Cal.App.3d 134, and its progeny (see p. 10, *ante*, for a partial list).

**CONCURRING OPINION BY LIU, J.**

Under *Eggert v. Pac. States S. & L. Co.* (1942) 20 Cal.2d 199 (*Eggert*), absent class members must formally intervene or file a motion to vacate the judgment in order to have the right to appeal as a party. (*Id.* at pp. 200–201; see Code Civ. Proc., § 902.) I agree we should continue to follow *Eggert* in light of the principle that adherence to precedent is a particularly strong consideration on matters of statutory interpretation. (*People v. Latimer* (1993) 5 Cal.4th 1203, 1213.) But I write separately to highlight significant changes in class action litigation practice since *Eggert* was decided. The Legislature, not bound as we are by stare decisis, may wish to revisit the controlling statute in light of those changes.

*Eggert* long predates the development of the modern class action and the emergence of the settlement practices that now resolve the majority of class actions. In the seven decades since *Eggert* was decided, we have gained a better understanding of the agency problems posed by class action settlements, including the difficulties of monitoring class counsel who are often incentivized to settle and possibly collude with defendants. (See Erichson, *The Problem of Settlement Class Actions* (2014) 82 Geo. Wash. L.Rev. 951, 957–965; Coffee, *The Regulation of Entrepreneurial Litigation: Balancing Fairness and Efficiency in the Large Class Action* (1987) 54 U. Chi. L.Rev. 877, 883–889; see generally Issacharoff, *Class Action Conflicts* (1997) 30 U.C. Davis L.Rev. 805.)

In light of these understandings, the high court has concluded that nonnamed class members who object at a settlement fairness hearing are entitled to appeal. (See *Devlin v. Scardelletti* (2002) 536 U.S. 1, 11 (*Devlin*).) *Devlin* emphasized that the ability to appeal overruled objections "cannot be effectively accomplished through the named class representative — once the named parties reach a settlement that is approved over petitioner's objections, petitioner's interests by definition diverge from those of the class representative." (*Id.* at p. 9.) Other appellate courts have also recognized this aspect of class action settlements: After a proposed settlement has been reached, the plaintiffs and defendants are no longer adversaries. "In such circumstances, objectors play an important role by giving courts access to information on the settlement's merits." (*Bell Atlantic Corp. v. Bolger* (3d Cir. 1993) 2 F.3d 1304, 1310; see *Redman v. RadioShack Corp.* (7th Cir. 2014) 768 F.3d 622, 629 ["When there are objecting class members, the judge's task is eased because he or she has the benefit of an adversary process: objectors versus settlors."]; Fitzpatrick, *The End of Objector Blackmail?* (2009) 62 Vand. L.Rev. 1623, 1630 (hereafter Fitzpatrick) ["[W]ithout objectors there would be no adversarial testing of class action settlements at all."].)

There is also reason to question the practical and policy advantages of the *Eggert* rule. It is true that if absent class members do not want to be bound by a settlement or judgment, they can opt out. But class members must decide whether to opt out before they have the opportunity to object to the resolution of the class claims. That was the case here: Class members had to opt out of the litigation by August 2013, but the trial court did not issue its proposed judgment until March 2014. The fact that absent class members who do not opt out of the litigation are bound by the judgment is precisely the reason why the high court granted them the right to appeal in *Devlin*. (*Devlin*, *supra*, 536 U.S. at p. 10.)

2

Further, although a requirement that absent class members formally intervene for purposes of appeal offers "a bright-line rule" (maj. opn., *ante*, at p. 14), a rule that absent class members who appear and object at a settlement fairness hearing have the right to appeal is similarly clear and orderly. Moreover, objecting at the fairness hearing, just like intervention, puts the parties on sufficient notice regarding the nature of the objections and creates a record for appeal.

There is a legitimate concern that the efficiencies of a class action would be defeated by "[m]eritless objections" raised by " 'professional objectors.' " (Maj. opn., *ante*, at p. 15.) But, as *Devlin* explained, "the power to appeal is limited to those nonnamed class members who have objected during the fairness hearing," and such appeals must be limited to the overruled objections. (*Devlin*, *supra*, 536 U.S. at p. 11.) Indeed, studies show that few class members in fact object to settlements. (Fitzpatrick, *supra*, 62 Vand. L.Rev. at pp. 1630–1631 [noting that "the median number of objections to a settlement was three — well less than one-tenth of one percent of class members"].) Although the possibility of lawyer-driven objector "blackmail" is real (*id.* at pp. 1633–1638), categorically denying objectors the right to appeal may not offer the best solution. (See *Vaughn v. Am. Honda Motor Co.* (5th Cir. 2007) 507 F.3d 295, 300 ["[I]mposing too great a burden on an objector's right to appeal may discourage meritorious appeals or tend to insulate a district court's judgment in approving a class settlement from appellate review."]; Fitzpatrick, at p. 1638 ["To believe that class action objectors have the power to blackmail class counsel is not, of course, to say that all objections are an attempt to do so. Courts and commentators note that objectors can serve a very positive role in class action settlements by bringing attention to flaws in those settlements."].)

3

Instead of restricting the right to appeal, courts and class counsel can invoke other mechanisms to limit the ability of professional objectors to delay class action settlements, such as imposing sanctions for frivolous appeals, expediting appeals, or requiring objectors to post a bond before taking an appeal. These approaches, among others, have been employed to varying degrees in federal class action practice. (See Lopatka & Smith, *Class Action Professional Objectors: What to Do About Them?* (2012) 39 Fla. St. U. L.Rev. 865, 896–918.) Other solutions can be implemented through legislation or amendments to court rules. For example, as amicus curiae Consumer Attorneys of California notes, the Advisory Committee on Federal Rule of Civil Procedure 23 recently proposed changes requiring objectors to state whether their objection "applies only to the objector, to a specific subset of the class, or to the entire class, and also state with specificity the grounds for the objection." (Advisory Committee on Civil Rules, Report of the Advisory Committee on Civil Rules (May 12, 2016), at p. 3.)

I express no definitive view on the merits of these alternatives. I simply note that the rule announced more than 75 years ago in *Eggert* may no longer strike an appropriate balance among the competing policy concerns raised by this case. Many courts in California and other jurisdictions have declined to follow *Eggert*'s rule. (Maj. opn., *ante*, at pp. 10, 13.) The Legislature may wish to revisit this issue in light of the current landscape of class action practice.

Liu, J.

4

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Hernandez v. Restoration Hardware, Inc.

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 245 Cal.App.4th 651
**Rehearing Granted**

_____

**Opinion No.** S233983
**Date Filed:** January 29, 2018

_____

**Court:** Superior
**County:** San Diego
**Judge:** William S. Dato

_____

**Counsel:**

Law Office of Lawrence W. Schonbrun and Lawrence W Schonbrun for Plaintiff and Appellant.

Patterson Law Group, James R. Patterson, Allison H. Goddard; Stonebarger Law, Gene J. Stonebarger and Richard D. Lambert for Plaintiffs and Respondents.

Nelson & Fraenkel, Gretchen M. Nelson; Hagens Berman Sobol Shapiro and Kevin K. Green for Consumer Attorneys of California as Amicus Curiae on behalf of Plaintiffs and Respondents.

No appearance for Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Lawrence W Schonbrun
Law Office of Lawrence W. Schonbrun
86 Eucalyptus Road
Berkeley, CA  94705
(510) 547-8070

Allison H. Goddard
Patterson Law Group
402 West Broadway, 29th Floor
San Diego, CA  92101
(619) 756-6990

Kevin K. Green
Hagens Berman Sobol Shapiro
525 B Street, Suite 1500
San Diego, CA  92101
(619) 929-3340