Filed 6/23/25  Magnetti v. The Highest Craft CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JOSHUA MAGNETTI,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>THE HIGHEST CRAFT, LLC et al.,<br><br>    Defendants and Respondents;<br><br>MARIA LOPEZ,<br><br>    Intervener and Appellant. | D084033<br><br><br>(Super. Ct. No. CVRI2105547) |

APPEAL from a judgment of the Superior Court of Riverside County, Harold W. Hopp, Judge.  Affirmed.

Daily Aljian, Justin E. Daily, Simon Kwak, Shelly D. Song; Torus, Daniel J. Hyun and David Alami, for Intervener and Appellant.

Falakassa Law, Joshua S. Falakassa; Bokhour Law Group, Mehrdad Bokhour and Zachary Cavanagh, for Plaintiff and Respondent.

No appearance for Defendants and Respondents.

Joshua Magnetti and Maria Lopez were simultaneously suing their employer for various wage and hour violations on a class and representative basis under the Private Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.), but Magnetti reached a settlement agreement with the employer first. After Magnetti sought approval of the settlement in the trial court, Lopez successfully intervened in Magnetti's case and raised several objections to the settlement. Ultimately, the court rejected Lopez's contentions, approved the settlement, and entered judgment.

Lopez appeals, arguing that the trial court abused its discretion in approving the settlement because Magnetti's counsel failed to adequately investigate one of the several claims resolved by the settlement agreement, and his prelitigation PAGA notice to the Labor and Workforce Development Agency (LWDA) was deficient. We conclude that although Lopez has standing to assert these claims on appeal, her contentions fail on the merits. Accordingly, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Between May and November 2021, Magnetti worked as a delivery driver for The Highest Craft, LLC (THC, doing business as HyperWolf), which provides on-demand delivery of cannabis to customers throughout Southern California. A month after leaving his employment, Magnetti filed a class action complaint on behalf of himself and all other similarly situated employees against THC. He alleged several violations of the Labor Code— failure to pay wages, meal and rest period violations, failure to reimburse for necessary business expenses (including a reasonable portion of monthly cell phone bills), wage statement violations, and waiting time penalties—as well as a violation of the unfair competition law (Bus. & Prof. Code, § 17200 et seq.).

2

Around the same time, Magnetti submitted a letter to the LWDA, with service to THC, giving notice of his intention to pursue civil penalties against THC pursuant to PAGA. The notice letter began by explaining that counsel represented Magnetti "and a proposed group of current and former non-exempt employees working for [THC] and any of its affiliated and/or predecessor or merged entities in the State of California for violations of the California Labor Code . . . ." It then stated that Magnetti wished to bring a representative action on behalf of himself, the State of California, and the following group of " 'aggrieved employees': [¶] All current and former non-exempt driver employees who work or worked for The Highest Craft, LLC, in any of its facilities in California, during the one year immediately preceding the filing of this PAGA Notice and continuing into the present and ongoing . . . ."

The letter went on to describe the Labor Code violations raised in Magnetti's class action complaint. For instance, Magnetti claimed the aggrieved employees were required to load their vehicles with product before clocking in; had to install THC's propriety smartphone application on their personal phones, which they were required to answer at all times (including during meal and rest periods); and often worked more than eight hours a day or 40 hours a week without overtime pay. When the LWDA declined to investigate the case, Magnetti filed an amended complaint adding a PAGA cause of action in June 2022.

In September 2022, Magnetti and THC attended private mediation and eventually reached a settlement agreement. Pursuant to the agreement, the parties stipulated that Magnetti would file a "Second Amended Class Action and PAGA Complaint" (SAC) adding related co-defendants. The SAC, filed in January 2023, added Community Development, LLC (CDL, also doing

3

business as HyperWolf), Hyper Technologies, Inc. (Hyper Technologies), Jacob Telo, Nick Wolin, and Hyper Inc. as named defendants. Magnetti alleged the defendants were agents of one another or "members of and engaged in a joint venture, partnership, and common enterprise" and were therefore "joint employers" of the class.[1] Broadly, the settlement agreement contemplated that, in exchange for a total payment of $400,000, Magnetti and the class members who did not opt out would release all class claims asserted against defendants in the SAC, and all aggrieved employees would release all PAGA claims asserted in both the prelitigation notice and the SAC.

On Magnetti's motion, the trial court granted preliminary approval of the settlement in April 2023. Soon thereafter, Lopez filed a motion for leave to intervene under Code of Civil Procedure section 387. As explained in her motion and supporting evidence, Lopez worked as a dispatcher for defendants from July to October 2020. In February 2021, she initiated a class and PAGA action on behalf of all nonexempt employees working for defendants. She asserted the same Labor Code and unfair competition violations that Magnetti alleged. Lopez and defendants set mediation for January 2023. A month earlier, THC filed and served a Notice of Related Case, informing her and the court in her case of Magnetti's action for the first time. Defendants then canceled her mediation. When Lopez became aware of the preliminary approval of the settlement agreement in Magnetti's case, she gathered the information necessary to prepare her intervention motion.

---

[1] According to a declaration Wolin submitted later in the proceedings, he is the manager of THC and CDL, as well as the CEO of Hyper Technologies and Hyper, Inc. As Lopez alleged in her own complaint in intervention, CDL, Telo, and Wolin are member managers of THC, and Hyper Technologies is a member manager of CDL.

Lopez contended that mandatory or, in the alternative, permissive intervention was warranted because Magnetti was not adequately representing the interests of the class members and aggrieved employees. She criticized several aspects of Magnetti's counsel's investigation and valuation of the claims against defendants. As relevant here, she argued that counsel failed to analyze the claim for unreimbursed business expenses. She further contended that the trial court could not approve the settlement because Magnetti failed to provide sufficient prelitigation notice to the LWDA and the "Late Added Defendants," meaning CDL, Hyper Technologies, Telo, Wolin, and Hyper, Inc. In pertinent part, she pointed out that the settlement "significantly expands the scope of the action to include all Late Added Defendants and all non-exempt employees" whereas Magnetti's prelitigation notice only concerned defendant THC and employees who worked as delivery drivers. As a result, Lopez argued, Magnetti "failed to exhaust his administrative remedies as to the Late Added Defendants [and] non-exempt employees other than delivery drivers."

In opposition, Magnetti (joined by THC) contended the settlement would not necessarily impair any interest of Lopez because she could simply opt out and pursue her individual claims against defendants in a separate action. To the extent the settlement would extinguish her PAGA claim, that claim always belonged to the state, not to her personally. Moreover, Magnetti maintained that counsel conducted all necessary discovery and investigation before reaching a settlement agreement with defendants. More specifically, during informal discovery before mediation, counsel reviewed hundreds of pages of documents and data (including a 20 percent sampling of timekeeping and payroll data, as well as the company's handbook and policies), interviewed multiple class members about their work experiences

5

with defendants, and engaged an expert to assess damages. He also argued that any alleged deficiency with his prelitigation notice was inconsequential because the LWDA had not responded or intervened in the action—despite receiving notice of the settlement concurrent with his motion for preliminary approval—and defendants could waive their right to assert defective notice as a procedural matter.

The trial court ultimately allowed Lopez to intervene, noting she had "an interest in the PAGA claim that will be affected by this litigation." Lopez's complaint in intervention, which realleged the same causes of action against defendants, was filed in June 2023. Magnetti, supported by defendants, then moved for final approval of the settlement. Lopez opposed the motion on similar grounds raised in her request to intervene. Following a hearing, the trial court granted final approval of the settlement.

In its written decision, the court acknowledged that Lopez raised several arguments as to why the settlement should not be approved, but it found none of them persuasive. As relevant here, the court concluded there was "no evidence that Magnotti [*sic*] or his counsel failed to investigate the claims being settled or colluded with the defense to reach an unfair settlement." To the extent Lopez argued the PAGA claims released in the settlement exceeded the scope of those described in Magnetti's prelitigation notice to the LWDA, the court believed any variance could call into question the preclusive effect of the judgment in the event Lopez attempted to seek PAGA penalties against defendants in future litigation. (See, e.g., *LaCour v. Marshalls of California* (2023) 94 Cal.App.5th 1172, 1194–1197.) But in the court's view, that was not a reason to deny final approval of the settlement.

6

## DISCUSSION

### A.    *Standing*

As an initial matter, we asked the parties to brief whether Lopez had standing to appeal because it was unclear from her notice of appeal and Civil Case Information Statement if she had become a proper party in the underlying action.  With the benefit of the complete appellate record and the parties' briefing, we agree with Lopez that she has standing.

Under Code of Civil Procedure section 902, "[a]ny party aggrieved" may appeal a judgment.  "Unnamed class members may become parties of record to class actions in one of two generally acceptable ways.  First, they may file a timely complaint in intervention before final judgment that sets forth the grounds upon which the intervention rests.  (Code Civ. Proc., § 387.)" (*Hernandez v. Restoration Hardware, Inc.* (2018) 4 Cal.5th 260, 267.)  Second, "an unnamed party to the action may also become a named party by filing an appealable motion to set aside and vacate the class judgment under [Code of Civil Procedure] section 663."  (*Hernandez*, at p. 267.)  "One is considered 'aggrieved' whose rights or interests are injuriously affected by the judgment. . . .  Appellant's interest ' "must be immediate, pecuniary, and substantial and not nominal or a remote consequence of the judgment." ' " (*County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 737, citations omitted.)

" 'The issue of whether a party has standing to appeal is a question of law'. . . .  We 'liberally construe standing and resolve all doubts about it in favor of the right to appeal.' "  (*Uribe v. Crown Building Maintenance Co.* (2021) 70 Cal.App.5th 986, 1001 (*Uribe*), citations omitted.)

In *Uribe*, *supra*, 70 Cal.App.5th 986, Division Three of this court concluded that an appellant had standing on facts similar to those presented here.  In that case, Isabel Garibay sued her employer, Crown Building

Maintenance Co. (Crown), asserting Labor Code violations for unreimbursed cell phone use on behalf of a putative class of employees and as a state representative under PAGA. (*Id.* at pp. 989, 991.) Another employee, Josue Uribe, subsequently sued Crown alleging various Labor Code violations— except for any claimed failure to reimburse cell phone use—in his individual capacity and as a representative under PAGA. (*Id.* at pp. 989, 991–993.) Uribe eventually reached a settlement agreement with Crown that "was conditioned on Uribe filing an amended complaint converting his lawsuit into a class action on his Labor Code claims and including unreimbursed employee cell phone usage costs as an additional basis for both his Labor Code and PAGA causes of action." (*Id.* at p. 989.) The agreement accordingly provided for a release of claims and causes of action related to personal cell phone use reimbursement, among others. (*Id.* at pp. 994–995.) When Uribe and Crown sought preliminary approval of the agreement, the trial court allowed Garibay to intervene as a named party in the lawsuit. (*Id.* at p. 996.) Over her opposition, the court later approved the settlement. (*Id.* at p. 989.)

The appellate court concluded that Garibay had standing to appeal because she became a party of record by successfully intervening in the action and was aggrieved by the settlement and ensuing judgment. (*Uribe*, *supra*, 70 Cal.App.5th at pp. 990–991, 1000–1001.) On the latter point, the court reasoned that although Garibay could opt out of the settlement with respect to the class claims, she did not have that option as to the PAGA claims. (*Id.* at p. 1001.) Therefore, insofar as the settlement included a release of PAGA claims based on Crown's alleged failure to reimburse cell phone expenses— the same claim Garibay raised in her complaint in intervention in Uribe's action—she stood to lose her right to pursue that claim if the judgment confirming the settlement were upheld. (*Id.* at pp. 990–991, 1001.)

8

The same is true here. Lopez became a party of record by successfully moving to intervene in this action. Although Lopez had the ability to opt out of the class settlement (it is unclear whether she in fact exercised that right, she could not opt out of the settlement as to the PAGA claims. The settlement agreement provides for the release of "all claims asserted in the PAGA Notice submitted to the LWDA and alleged in the Operative Complaint" (i.e., the SAC) for the duration of the PAGA Period (i.e., February 4, 2020 through April 17, 2023) Lopez's complaint in intervention asserts a PAGA cause of action against the same defendants, covering the same time period, based on several of the same Labor Code violations and theories of liability. Accordingly, Lopez is aggrieved insofar as the settlement and judgment would extinguish the PAGA claims raised in her complaint in intervention.

We acknowledge that in *Turrieta v. Lyft, Inc.* (2024) 16 Cal.5th 664 (*Turrieta*)—decided while this case was pending on appeal—the Supreme Court held that PAGA does not give a plaintiff who was been deputized to recover civil penalties on behalf of the LWDA the unfettered right to intervene, object to a proposed settlement, or move to vacate the judgment in the ongoing action of another deputized plaintiff asserting similar PAGA claims. (*Id*. at pp. 676–677, 680.) In so holding, however, the *Turrieta* court distinguished *Uribe*. (*Turrieta, supra*, 16 Cal.5th at pp. 707–708.) Unlike in *Turrieta*, the trial court in *Uribe* allowed Garibay to intervene in the action, and neither Uribe nor Crown challenged that ruling on appeal. (*Turrieta*, at p. 708; *Uribe, supra*, 70 Cal.App.5th at p. 1002.) The *Uribe* court therefore presumed the court's ruling was correct and did not consider the issue decided in *Turrieta*—namely, "whether a PAGA plaintiff's authority includes

9

the right to intervene in another aggrieved employee's separate PAGA action." (*Turrieta*, at p. 708.)

Moreover, the appellant in *Turrieta* expressly and exclusively relied on the state's interest and his status as the state's proxy in claiming the right to intervene, object, and vacate the judgment. (*Turrieta*, *supra*, 16 Cal.5th at pp. 684, 711–713.)[2]  By contrast, the Supreme Court viewed "the lynchpin of the *Uribe* court's standing analysis" as being that "(1) Garibay formally asserted a 'PAGA cause of action *in [Uribe's] lawsuit*' by filing a complaint in intervention and becoming a named party"; "(2) the PAGA cause of action 'was resolved against her' by 'the other parties' settlement of Uribe's PAGA claim' "; and "(3) the cause of action would be 'precluded if Uribe's PAGA settlement stands.' " (*Turrieta*, at p. 708.)  In other words, the standing analysis in *Uribe* rested "not on Garibay's authority to assert the state's interest in an overlapping PAGA action, but on the effect of the settlement on the PAGA claim that Garibay had *formally asserted in Uribe's action by filing a complaint in intervention.*" (*Ibid*.)  *Turrieta* thus concluded that "*Uribe* sheds no light on whether the scope of a PAGA plaintiff's authority, as the state's representative, includes the right to assert whatever authority the state may have to request intervention in the PAGA action of another plaintiff." (*Turrieta*, at p. 708.)

---

2  Because the appellant-intervener disclaimed any personal interest in the action, the *Turrieta* court "express[ed] no opinion on whether a PAGA plaintiff has a personal interest that may satisfy the 'interest' requirement for intervention under Code of Civil Procedure section 387." (*Turrieta*, *supra*, 16 Cal.5th at p. 684, fn. 6.)  The majority also clarified that it was not holding "that PAGA 'bars' intervention" but more narrowly that PAGA did not confer upon the appellant-intervener the asserted right or power to intervene on the state's behalf. (*Id*. at p. 705, fn. 21.)

As in *Uribe*, the trial court in this case permitted Lopez to intervene and, as a result, she can legitimately claim that her interest in pursuing the PAGA cause of action raised in her complaint in intervention is in jeopardy. We have no occasion to evaluate the propriety of the trial court's decision to allow Lopez to intervene in the first place because, as in *Uribe*, neither Magnetti nor defendants challenged that decision on appeal. Indeed, Magnetti's only argument on the issue of standing is that Lopez is not a party of record because she did not move to vacate the judgment. But, as explained above, she became a party by successfully intervening in this action. We will therefore address Lopez's contentions on the merits.

## B. *Investigation of Cell Phone Reimbursement Claim*

Lopez primarily contends the trial court abused its discretion in approving the settlement because Magnetti's counsel failed to investigate and determine the strength and value of the claim for unreimbursed cell phone expenses. As noted above, Magnetti alleged that employees were required to download THC's smartphone application on their personal devices and to use the application to carry out delivery orders, yet THC did not reimburse the employees for a reasonable portion of their monthly cell phone bills. (See Lab. Code, § 2802.) Upon reviewing the record, we conclude substantial evidence supports the trial court's finding that counsel adequately investigated the claim.

Although class actions and representative actions under PAGA have many differences, trial courts evaluate proposed settlements in both types of actions by independently determining whether the settlement is fair, adequate, and reasonable. (*Moniz v. Adecco USA, Inc.* (2021) 72 Cal.App.5th 56, 76–77 (*Moniz*); see also *Dunk v. Ford Motor Co.* (1996) 48 Cal.App.4th 1794, 1801 (*Dunk*).) Indeed, since "many of the factors used to evaluate class

11

action settlements bear on a settlement's fairness—including the strength of the plaintiff's case, the risk, the stage of the proceeding, the complexity and likely duration of further litigation, and the settlement amount—these factors can be useful in evaluating the fairness of a PAGA settlement." (*Moniz*, at p. 77.)

Fairness may be presumed when:  "(1) the settlement is reached through arm's-length bargaining; (2) investigation and discovery are sufficient to allow counsel and the court to act intelligently; (3) counsel is experienced in similar litigation; and (4) the percentage of objectors is small." (*Dunk*, *supra*, 48 Cal.App.4th at p. 1802.)  Regarding the second factor, at issue here, the trial court must "receive and consider enough information about the nature and magnitude of the claims being settled, as well as the impediments to recovery, to make an independent assessment of the reasonableness of the terms to which the parties have agreed." (*Kullar v. Foot Locker Retail, Inc.* (2008) 168 Cal.App.4th 116, 133 (*Kullar*).)  The court must "satisfy itself that the class settlement is within the 'ballpark' of reasonableness." (*Ibid.*)

We review the trial court's approval of a settlement for abuse of discretion. (*Moniz*, *supra*, 72 Cal.App.5th at p. 78; see also *Kullar, supra*, 168 Cal.App.4th at pp. 127–128.)  Under this standard, the "trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711–712, fns. omitted.)

Here, substantial evidence supports the trial court's finding that counsel adequately investigated the claims being settled, including the cell phone reimbursement claim.  As explained in declarations submitted by

12

counsel in support of Magnetti's motion for preliminary approval of the settlement, the parties engaged in informal discovery before mediation. Defendants produced hundreds of pages of documents and data, including the number of current and former hourly-paid, nonexempt employees that worked for defendants during the relevant time period, as well as a sampling of timekeeping and payroll data. Using this data, counsel hired an expert to perform damages and valuation analyses. Counsel also interviewed several class members regarding their experience working with defendants.

Based on the information received from defendants, counsel determined there were approximately 327 class members and 14,922 pay periods worked during the Class Period (December 12, 2017 through April 17, 2023), as well as 216 aggrieved employees and 7,196 pay periods worked during the PAGA Period (February 4, 2020 through April 17, 2023). Taking together the number of employees, the number of pay periods, and the typical cost of a monthly cell phone bill—which, given the ubiquity of cell phones these days, the trial court could reasonably assume counsel and/or the expert appreciated—the court could fairly conclude that counsel had sufficient information to value the reimbursement claim.

Lopez emphasizes that Magnetti did not include the cell phone reimbursement claim in the section of his motion for preliminary approval of the settlement where he breaks down how the parties reached a $400,000 total settlement amount. Essentially, Magnetti estimated the maximum damages recoverable for most claims raised in the SAC, and discounted that amount based on the defenses raised. While the cell phone reimbursement claim is absent from this discussion, Magnetti was not required to receive compensation for every claim alleged. He could have reasonably decided to forgo that claim in settlement negotiations, focusing instead on his strongest

claims. (See *Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 250 ["Compromise is inherent and necessary in the settlement process. Thus, even if 'the relief afforded by the proposed settlement is substantially narrower than it would be if the suits were to be successfully litigated' this is no bar to a class settlement because 'the public interest may indeed be served by a voluntary settlement in which each side gives ground in the interest of avoiding litigation.' "].) Lopez does not contend that the $400,000 settlement—of which individual employees received on average $600 and at most $2,600 each—was unfair.

## C. *Prelitigation Notice*

Lopez also maintains the trial court erred in approving the settlement agreement because Magnetti's prelitigation notice letter to the LWDA only describes violations committed by one defendant—THC—against a narrow set of aggrieved employees—nonexempt delivery drivers—whereas the settlement more broadly releases claims held by nonexempt employees of six defendants—THC, CDL, Hyper Technologies, Telo, Wolin, and Hyper Inc.

Under PAGA, an "aggrieved employee" can bring a civil action on behalf of themselves and other current or former employees to recover civil penalties for Labor Code violations. (Lab. Code, § 2699, subd. (a).) Before commencing a PAGA action in superior court, however, the employee must give written notice to their employer and to the LWDA of the specific Labor Code provisions alleged to have been violated, "including the facts and theories to support the alleged violation." (*Id.*, § 2699.3, subd. (a)(1)(A).) The employee may file their action if the LWDA declines to investigate the

14

alleged violations, investigates but decides not to issue a citation, or fails to respond to the employee's notice within 65 days. (*Id.*, subd. (a)(2)(A) & (B).)[3]

"The evident purpose of the notice requirement is to afford the [LWDA] the opportunity to decide whether to allocate scarce resources to an investigation, a decision better made with knowledge of the allegations an aggrieved employee is making and any basis for those allegations. Notice to the employer serves the purpose of allowing the employer to submit a response to the agency . . . , again thereby promoting an informed agency decision as to whether to allocate resources toward an investigation." (*Williams v. Superior Court* (2017) 3 Cal.5th 531, 545–546 (*Williams*), citation omitted.)

Accordingly, the notice "must be specific enough such that the LWDA and the defendant can glean the underlying factual basis for the alleged violations." (*Gunther v. Alaska Airlines, Inc.* (2021) 72 Cal.App.5th 334, 350 (*Gunther*), internal quotations omitted.) A "string of legal conclusions with no factual allegations or theories of liability to support them . . . is insufficient to allow the [LWDA] to intelligently assess the seriousness of the alleged violations." (*Ibid.*, internal quotations omitted.) "Plaintiff, however, need not set forth every potential fact or every future theory." (*Ibid.*, internal quotations omitted.)

Nothing in the plain text of Labor Code section 2699.3 requires the PAGA plaintiff to define "aggrieved employees" in the prelitigation notice. (*Ibarra v. Chuy & Sons Labor, Inc.* (2024) 102 Cal.App.5th 874, 882 (*Ibarra*).)

---

3    Labor Code sections 2699 and 2699.3 were amended shortly before briefing began. (Stats. 2024, ch. 44, § 1, eff. July 1, 2024 [§ 2699]; Stats. 2024, ch. 45, § 2, eff. July 1, 2024, operative Oct. 1, 2024 [§ 2699.3].) It appears the changes are not relevant to the issues here, and the parties do not discuss them in their briefs.

"So long as the PAGA plaintiff provides facts and theories to support that alleged wage and hour violations were committed against them, and includes nonfrivolous allegations that other employees were similarly subjected to such practices, the notice is sufficient." (*Id.* at p. 883; see also *Gunther*, *supra*, 72 Cal.App.5th at p. 350 [notice is sufficient "so long as it contains some basic facts about the violations, such as which provision was allegedly violated and who was allegedly harmed" (internal quotations omitted)].)

For example, it is sufficient for a plaintiff to allege in a prelitigation notice that the "defendants committed numerous wage and hour violations against [plaintiff] 'and all other current and former non-exempt employees of [defendants] in the State of California during the last four years,' " with "sufficient facts and theories to apprise the LWDA and the [d]efendant of the seriousness of the alleged wage and hour violations," without specifically defining the group of aggrieved employees. (*Ibarra*, *supra*, 102 Cal.App.5th at p. 883.) It is likewise sufficient for a prelitigation notice to describe "ongoing Labor Code violations that [are] not by nature isolated or unique to plaintiffs"—such as meal break, rest break, and overtime violations where the employer used a timecard machine—without expressly referencing other aggrieved employees implicated by the action. (*Santos v. El Guapos Tacos, LLC* (2021) 72 Cal.App.5th 363, 366–367, 372 (*Santos*).) Such notice still alerts "the LWDA to a potentially sizable employee pool." (*Id.* at p. 370.)

By contrast, a prelitigation notice that plainly describes violations committed against only one employee—such as failing to timely issue the employee's final paycheck with all the required information—is insufficient to give the LWDA notice of a representative action. (*Khan v. Dunn-Edwards Corp.* (2018) 19 Cal.App.5th 804, 807, 809.) When a prelitigation notice describes only an individual violation, the LWDA may conclude that no

16

investigation is warranted, and it is therefore denied a fair opportunity to decide whether to allocate resources to the action. (*Id.* at p. 809.)

Here, Magnetti's prelitigation notice describes more than half-a-dozen Labor Code violations with supporting facts and theories. For instance, he alleged THC failed to pay him and other aggrieved employees minimum and overtime wages by requiring them to take inventory and complete other predelivery tasks before clocking in. He also alleged THC failed to reimburse him and other aggrieved employees for business expenses insofar as they were required to use THC's propriety smartphone application to complete deliveries, yet the company did not pay for a reasonable portion of their cell phone bills. Lopez does not contend otherwise.

Instead, Lopez focuses on the fact that Magnetti failed to identify the "Late Added Defendants" and failed to include all non-exempt employees of all defendants in his definition of aggrieved employees in his notice letter. To be sure, Magnetti's notice stated that he intended to bring a representative action on behalf of himself and " 'the following group of 'aggrieved employees': [¶] All current and former non-exempt driver employees who work or worked for The Highest Craft, LLC, in any of its facilities in California, during the one year immediately preceding the filing" of the notice. But the notice also stated that counsel represented Magnetti "and a proposed group of current and former non-exempt employees working for [THC] and any of its affiliated and/or predecessor or merged entities . . . ."

In our view, the latter explanation, coupled with the fact that Magnetti's notice describes several alleged violations that are not unique to him, but rather resulted from company-wide policies and practices, was sufficient to give the LWDA a sense of the seriousness and potential reach of the alleged violations, which in turn allowed the agency to intelligently

17

decide whether it should investigate the case itself. Moreover, given the close relationship between THC and the Late Added Defendants (see fn. 1, *ante*), the notice gave defendants sufficient information to decide " ' "whether to fold or fight" ' " at that point. (*Santos*, *supra*, 72 Cal.App.5th at p. 372.)

This is all Magnetti had to do. He was not required to define a group of aggrieved employees; the fact that he made some attempt does not mean he was bound to that definition for the rest of the case. Upon learning the identities of the Late Added Defendants and the other employees involved with HyperWolf during discovery, he was permitted to include them in the litigation. (See *Williams*, *supra*, 3 Cal.5th at p. 546 [the purposes of PAGA "would be ill served by presuming . . . that deputized aggrieved employees must satisfy a PAGA-specific heightened proof standard at the threshold, before discovery"]; see also *Ibarra*, *supra*, 102 Cal.App.5th at p. 885 [plaintiff " ' "need not set forth 'every potential fact or every future theory' " ' " in her prelitigation notice . . . , and 'we see nothing in [Labor Code] section 2699.3 suggesting that factual allegations in PAGA notices must exceed those normally found sufficient in complaints' " (citations omitted)].)

In any event, we fail to see any prejudice resulting from the variance between Magnetti's prelitigation notice letter and the settlement given that he twice submitted copies of the settlement to the LWDA concurrent with his motions for preliminary and final approval of the settlement. Labor Code section 2699 mandates that the superior court "review and approve any settlement of any civil action filed" under PAGA, and requires the plaintiff to submit any proposed settlement to the LWDA at the same time it is submitted to the court. (*Id.*, subd. (s)(2).)[4] As the Supreme Court recently

---

[4] Before the statutory amendments noted above (see fn. 3, *ante*), this provision existed in subdivision (*l*)(2) of Labor Code section 2699.

18

explained in *Turrieta*, *supra*, 16 Cal.5th 664, in enacting this provision the Legislature entrusted the courts and the LWDA—*not* plaintiffs in parallel PAGA actions—to assess the fairness of proposed settlements and " 'ensure that PAGA cases [were] pursued in the public's interest and not just for private purposes.' " (*Id.* at pp. 696–697.) The court further observed that requiring plaintiffs to give presettlement notice "necessarily implies, at minimum, that the LWDA may offer comments to courts on proposed settlements and that courts have discretion to consider such comments." (*Id.* at p. 707.)

Because Magnetti provided proper presettlement notice to the LWDA, and the agency did not offer any comments or objections to the proposed settlement—which clearly identified THC, CDL, Hyper Technologies, Telo, Wolin, and Hyper Inc. as Defendants, and defined "Aggrieved Employees" as "all other current and former as a non-exempt, hourly-paid employee and/or independent contractors employed by Defendants"—we can presume the LWDA considered the settlement fair despite any differences between the presettlement notice and the prelitigation notice that Magnetti sent earlier.

## DISPOSITION

The judgment is affirmed. Magnetti is entitled to costs on appeal.

DATO, J.

WE CONCUR:

McCONNELL, P. J.

KELETY, J.

19