Filed 2/6/25

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| EMOKE HAY,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DAVID MARINKOVICH,<br><br>    Defendant and Appellant. | D082561<br><br><br>(Super. Ct. No. 37-2019-00024210-CU-FR-CTL) |

APPEAL from an order and amended judgment of the Superior Court of San Diego County, Carolyn Caietti, Judge.  Affirmed.

StormoenLaw, Ron A. Stormoen and Amber J. Babin for Defendant and Appellant.

Procopio, Cory, Hargreaves & Savitch, Kendra J. Hall and Sean M. Sullivan, for Plaintiff and Respondent.

Plaintiff Emoke Hay (also known as "Emma") filed a complaint against David Marinkovich that included a claim for violation of Penal Code section 502,[1] which prohibits the unauthorized use of any computer system for an

---

[1]    Further statutory references are to the Penal Code unless otherwise stated.

improper purpose. Hay alleged that Marinkovich made and retained an unauthorized copy of her computer hard drive, which contained her private and confidential data. After a civil jury trial, the jury found in favor of Marinkovich on each of Hay's causes of action, and the trial court entered judgment for Marinkovich. Marinkovich then filed a motion for attorney fees and costs after judgment under section 502, subdivision (e). The trial court granted Marinkovich's costs but denied his request for attorney fees. The court found that section 502 does not permit an award of fees to prevailing defendants and that, even if did, it would be unreasonable to award fees in this case because there was no evidence that Hay's claim was frivolous or abusive.

Marinkovich appeals the order, contending the trial court erred in concluding that prevailing defendants cannot recover attorney fees under section 502. He argues that the plain language of the statute permits the award of attorney fees to any party, and that he was not required to prove Hay's claim was frivolous or abusive.

We agree with Marinkovich that section 502 allows the award of attorney fees to prevailing defendants. We further conclude, however, that section 502 defendants may only recover attorney fees where the plaintiff's claim was objectively without foundation when brought, or the plaintiff continued to litigate after it clearly became so. (*Travis v. Brand* (2023) 14 Cal.5th 411, 414–415 (*Travis*).) The trial court here acted well within its discretion in finding that Hay's claim was not frivolous or abusive, and Marinkovich thus did not meet the "objectively without foundation" standard. We therefore affirm the order.[2]

---

[2] Marinkovich also filed a motion for judicial notice of the Register of Actions in a prior lawsuit between the parties, two special verdict forms from

FACTUAL AND PROCEDURAL BACKGROUND

A. *Prior Lawsuit*

In 1981, Hay and her husband (the Hays) founded a software company called Corrugated Technologies, Inc. (CTI).  The Hays owned CTI until they sold it in 2015.  Marinkovich worked at CTI from 1989 until the company was sold.  Hay and Marinkovich were part of the management team at the company.

After the Hays sold CTI, Marinkovich sought legal advice because he did not receive the compensation he had been promised from the sale.  In 2017, Marinkovich and another CTI employee filed a lawsuit against the Hays and CTI relating to the sale of the company.  In July 2018, Marinkovich's attorneys in that lawsuit sent a letter to the Hays stating that they had possession of five documents that they identified as potentially attorney-client privileged communications.  Hay had no idea how Marinkovich had obtained the documents.  A few months later, Marinkovich testified during his deposition that he had a backup of computer data from Hay's laptop on one of his external hard drives.

The prior lawsuit was resolved in August 2019, with the Hays and CTI paying Marinkovich and his co-plaintiff money as part of that resolution.

---

that lawsuit, and an unpublished Court of Appeal decision.  We deny his motion.  First, the two prior lawsuit documents were not admitted as evidence at trial, nor were they submitted in support of Marinkovich's fees motion, and " '[r]eviewing courts generally do not take judicial notice of evidence not presented to the trial court' absent exceptional circumstances." (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 379, fn. 2.)  We find no exceptional circumstances here.  Second, with certain exceptions, "the Rules of Court generally prohibit us from noticing unpublished opinions." (*Hernandez v. Restoration Hardware, Inc.* (2018) 4 Cal.5th 260, 269, fn. 2, citing Cal. Rules of Court, rule 8.1115(a).)  None of the exceptions apply here.

B. *Current Litigation*

    1. *Complaint*

In July 2019, the Hays filed the first amended complaint in this case, alleging that Marinkovich made an unauthorized backup of Hay's private and confidential computer data. They asserted claims for violation of their right to privacy under the California constitution, violation of the Comprehensive Computer Data Access and Fraud Act (§ 502), trespass to chattels, conversion, and receiving stolen property (§ 496). The Hays sought special damages, punitive damages, injunctive relief, and attorney fees.

    2. *Pre-trial Motions*

In 2021, Marinkovich filed a motion for summary judgment, which the trial court denied in its entirety. Before trial, Marinkovich also filed six motions in limine, including to dismiss Hay's claims for trespass to chattels and conversion. Hay did not oppose the motions to exclude evidence and voluntarily dismissed the two challenged causes of action. Hay's husband dismissed all of his claims against Marinkovich before trial.

Hay and Marinkovich went to trial in September 2022.

    3. *Jury Trial*

Hay testified that in 2015, Marinkovich helped her create a backup of her laptop data after she was unable to get the backup process working one day. Marinkovich came to her office, "typed something in" on her computer that caused the backup to start working, and then he left. Hay did not see Marinkovich bring anything into her office and said he did not use a different external hard drive to create the backup. Rather, she saw her own external hard drive plugged in to her computer. While her data was being backed up, Hay and Marinkovich both left her office. When Hay returned to her office

4

and the backup was complete, she disconnected her external hard drive and left.

The backup of Hay's hard drive contained "very private information" including, payroll, employee salary and commissions, employee personal information, and human resources information, as well as Hay's personal finances, bank accounts, social security number, tax returns, family communications, and what amounted to a 25-year-long personal diary with personal notes to herself. When she later discovered Marinkovich had a copy of her entire backup, Hay felt afraid, betrayed, and humiliated. She felt her privacy had been violated and, as a result, suffered from anxiety, depression, and trouble sleeping.

Marinkovich recalled the events of the day in question differently. He testified that he purchased a new laptop for Hay and was transferring her data from her old computer to the new one. Marinkovich had his hard drive with him and went into Hay's office to suggest backing up her old drive in case any data was inadvertently lost in the transfer to her new computer. Marinkovich denied that Hay already had an external hard drive plugged in and stated that he entered Hay's office, plugged in his own external hard drive, and made the backup of her data. Marinkovich agreed that he and Hay both left Hay's office while the files were transferring. He then returned, unplugged his drive after the backup finished, and put the drive in his backpack because he thought it was better to keep the backup separate from the laptop. Marinkovich does not recall discussing permission to take the backup copy with him, but he believed it was Hay's expectation that he would take it with him. He testified that it was company policy to take backup drives off site.

In January 2016, Marinkovich discovered the backup of Hay's computer data while looking for an external hard drive onto which he could transfer pictures from his camera. Marinkovich searched Hay's data for any files from 2001, the year he said he had been promised compensation from the sale of CTI. Marinkovich opened only one file from Hay's data—a "very important" "CTI document that later became admissible in the previous lawsuit." He recognized that the drive with Hay's computer data backup was "very important" to him and his co-plaintiff in terms of their claims against the Hays and CTI, so he set the drive aside and sought legal advice about how to proceed. Marinkovich later testified that he "picked out some CTI files that were very relevant to the previous litigation" and turned those over to his lawyers. At some point, he moved the original hard drive onto another machine, and there were a total of three copies of Hay's old hard drive. All of those copies remained with his lawyers.

CTI employee Peter Juhasz testified that he was familiar with the company's network and backup procedures. According to Juhasz, it was not the company's usual practice for employees to take the laptops of other employees home. He explained that the company had both restricted and unrestricted folders on its servers, with employees generally able to access unrestricted folders. During litigation, Juhasz was asked to find deleted files in Marinkovich's folder on the company network server. Juhasz located in Marinkovich's server folder a deleted folder named "Emma's Old Hard Drive" and saw that 8,221 files had been deleted from the folder. He did not know who uploaded the files or when they were uploaded or deleted.

Marinkovich denied uploading the folder "Emma's Old Hard Drive" to the company server and testified that he did not delete any files from that folder. He further testified that many files were missing from the "Emma's

6

Old Hard Drive" folder and the folder was substantially different from the backup he made of Hay's computer data.

### 4. *Verdict and Judgment*

The jury found in favor of Marinkovich on Hay's claims for violation of section 502, violation of section 496, and invasion of privacy. Marinkovich filed a judgment that included blank spaces for his costs and fees. The trial court wrote "TBD" in the blank space for the amount of costs, and "TBD as permitted by law" in the blank space for the amount of attorney fees.

### 5. *Attorney Fees Motion*

Marinkovich filed a motion for attorney fees and costs after judgment under Code of Civil Procedure sections 1032 and 1033.5 and Penal Code section 502, seeking $19,284.58 in costs and $315,427.00 in attorney fees. Hay opposed the motion, arguing that section 502 does not authorize an award of fees to defendants and that, in any event, his claimed fees were excessive. Marinkovich argued in reply that the plain language of section 502 permits fees for prevailing defendants and that, alternatively, he should be awarded fees because Hay's section 502 claim was frivolous and abusive.

After holding a hearing on Marinkovich's motion, the trial court awarded costs but denied fees. The court ruled first that Marinkovich did not provide, and the court did not find, any published California case law on whether a defendant can recover attorney fees under section 502. The court further found that "it would be unreasonable to award fees" to Marinkovich because there was "no evidence to find Plaintiff's Penal Code section 502 claim was frivolous or abusive [citation] and the jury found in Plaintiff's favor on some of the Penal Code section 502 claim questions on the special verdict, as well as on the other causes of action."

7

DISCUSSION

A. *A Defendant May Recover Attorney Fees Under Section 502*

Marinkovich contends that a plain reading of section 502, subdivision (e) authorizes the trial court to award attorney fees to a prevailing defendant, and the trial court erred in finding otherwise. He further argues that even if we were to consider the legislative history of section 502, it demonstrates that the Legislature intended that any party could recover their attorney fees under the statute.

Hay, relying on several federal district court opinions, argues that the Legislature's amendment to the statutory language in 2000 demonstrates it intended to limit attorney fees awards to prevailing plaintiffs. She asks us to affirm the trial court's order on this basis.

*1. Standard of Review*

We generally review an order denying attorney fees after trial for abuse of discretion. (*Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1213 (*Whitley*).) But where the determination of whether the criteria for an award of attorney fees have been satisfied requires statutory construction, de novo review is warranted. (*Id.* at pp. 1213–1214.) The first issue before us is whether a prevailing defendant may recover attorney fees under section 502. We therefore review this question de novo.

*2. Legislative Background*

We begin with a brief history of section 502 to provide further context. The Comprehensive Computer Data Access and Fraud Act is essentially an anti-computer hacking statute that was enacted to prohibit the unauthorized use of any computer system for an improper purpose. (*Sunbelt Rentals, Inc. v. Victor* (N.D. Cal. 2014) 43 F.Supp.3d 1026, 1032; Stats. 1987, ch. 1499, §§ 1, 3 ["It is the intent of the Legislature in enacting this section to expand

8

the degree of protection . . . from tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems."].)  The statute set forth seven criminal acts punishable by fines, imprisonment, or both.  (Stats. 1987, ch. 1499, § 3.)  As originally enacted, it also provided that victims of computer hacking could bring a civil action against any person convicted under section 502.  (*Ibid*.)  Victims who prevailed in their civil action could seek an award of attorney fees.  (*Ibid*. ["In any action brought pursuant to this subdivision the court may award reasonable attorney's fees to a prevailing party."].)

Over 20 years after the statute was enacted, the Legislature amended it to address its lack of enforcement.  (See Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2727 (1999–2000 Reg. Sess.) as amended Aug. 7, 2000, pp. 4–5.)  According to the Legislature, three main problems arose with the enforcement of section 502: (1) "lack of technical experience on the part of the local prosecutor[s]"; (2) "lack of funds to pursue a complete investigation"; and (3) "lack of interest" on the part of local prosecutors when an unauthorized access attempt had been stopped.  (*Ibid*.)  The Legislature thus proposed amending the statute to make it easier for computer hacking victims to seek civil remedies without first obtaining a criminal conviction.  (See *id*. at p. 5.)

In 2000, two competing bills were introduced to eliminate the criminal conviction prerequisite to filing a civil action—Assembly Bill Nos. 2232 and 2727.  Both bills allowed for a civil cause of action for the tort of computer hacking regardless of whether prosecutors had obtained a criminal conviction.  Both bills also contained a provision allowing the court to grant an award of attorney fees, but the language differed.  Assembly Bill No. 2232's fee provision stated: "In any action brought pursuant to this subdivision the court may award reasonable attorney's fees to a prevailing

9

party." (Stats. 2000, ch. 634, § 1.) Assembly Bill No. 2727's fee provision stated: "In any action brought pursuant to this subdivision the court may award reasonable attorney's fees." (Stats. 2000, ch. 635, § 2.) Both bills were passed and approved by the Governor in 2000, with the final codification reflecting Assembly Bill No. 2727's fee provision.[3] (§ 502, subd. (e)(2).)

A Senate Judiciary Committee report on Assembly Bill No. 2727 provides some insight as to why the bill was codified without the "prevailing party" language. Under the section titled "Recent amendments remove opposition," the report states: "[E]xisting law allows the award of [reasonable] attorney's fees to prevailing parties. In response to concerns that this language might chill desired civil enforcement under the proposed new civil cause of action, this provision is proposed for repeal." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2727 (1999–2000 Reg. Sess.) as amended Aug. 7, 2000, p. 5.) The Legislative Counsel's Digest of Assembly Bill No. 2727, however, provides: "This bill would also authorize a court to award punitive or exemplary damages where a violation of these criminal provisions was willful, or where it is proven that the defendant has been guilty of oppression, fraud, or malice as specified, would allow the award of

---

3    Sections 1 and 1.5 of Assembly Bill No. 2232 contained two alternative sets of amendments to section 502. Section 1 included the "prevailing party" fees provision. (Stats. 2000, ch. 634, § 1.) Section 1.5 mirrored the provisions of Assembly Bill No. 2727, including eliminating the "prevailing party" language of the fees provision. (Stats. 2000, ch. 634, § 1.5.) Section 2 of Assembly Bill No. 2232 stated that if both bills were enacted, but Assembly Bill No. 2727 was enacted first, then section 1 of Assembly Bill No. 2232 would not become operative and section 1.5 would become operative. (Stats. 2000, ch. 634, § 2.) While both bills were filed with the Secretary of State the same day, we infer that Assembly Bill No. 2727 was enacted first, because its version of section 502, subdivision (e)(2) was the one that was codified.

attorney fees to *any party*, and would impose a 3-year statute of limitations."
(Italics added.)

The parties dispute the meaning and import of this legislative history.

*3. Analysis*

Our fundamental task in interpreting a statute is to determine and effectuate the intended purpose of the Legislature. (*Ryan v. Rosenfeld* (2017) 3 Cal.5th 124, 128.) To do that, we first look to the statutory language, which usually provides the best indicator of the statute's purpose. (*Ibid.*) If it is unambiguous, then its plain meaning controls, and that is the end of the analysis. (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 83.) If, however, the language is ambiguous, then we look to extrinsic aids, including the legislative history. (*Ibid.*)

Section 502, subdivision (e)(2) states that in "any action brought pursuant to this subdivision the court may award reasonable attorney's fees." Marinkovich argues that this language is not ambiguous but rather plainly inclusive. He contends that because nothing in the language of the statute limits fees awards to prevailing plaintiffs, the trial court erred by reading such a limitation into the statute. Hay does not address the plain language argument, instead skipping ahead to an analysis of the statute's legislative history.

We agree with Marinkovich that the language of section 502 is clear and unambiguous. First, all that it requires for the trial court to award fees is an action "pursuant to" section 502, subdivision (e). The text of the statute does not limit the award to a particular party, and we may not infer such a limitation. (See *Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 545 [in construing a statute, courts "may not broaden or narrow the scope of the provision by reading into it language that does not appear in it or reading out

11

of it language that does"]; *Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 73–74 ["A court may not rewrite a statute, either by inserting or omitting language, to make it conform to a presumed intent that is not expressed."]; Code Civ. Proc., § 1858 ["In the construction of a statute . . ., the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted"].) Based on the statutory text alone, the court may award any party its fees under section 502. The fact that the statute may be broad does not make it ambiguous.

Second, if the Legislature intended to limit fee awards to prevailing plaintiffs, "it could easily have said so." (*Riverside County Sheriff's Dept. v. Stiglitz* (2014) 60 Cal.4th 624, 632 (*Stiglitz*).) Indeed, it has done so in other contexts. (See, e.g., Code Civ. Proc., § 1021.9 ["In any action to recover damages to personal or real property resulting from trespassing on lands either under cultivation or intended or used for the raising of livestock, the *prevailing plaintiff* shall be entitled to reasonable attorney's fees . . . ."]; Civ. Code, § 52.8, subd. (a) ["In a civil action seeking damages or equitable relief against any person or entity that distributes, benefits from, promotes, or induces another person to distribute unauthorized obscene materials, including through electronic distribution, a *prevailing plaintiff* shall be awarded attorney's fees and costs." (Italics added.)]) It chose not to do so here. "Although the surest guide to legislative intent will almost always be the language actually used by the Legislature, it may also be useful to consider language *not* used, particularly when it appears that the Legislature could have easily expressed the intention for which a party contends." (*County of Santa Clara v. Escobar* (2016) 244 Cal.App.4th 555, 572.) Because the Legislature could have easily expressed the meaning asserted by Hay, its

decision not to do so "is some indication that it did not intend the statute to convey that meaning." (*Id*. at p. 574.)

Under other circumstances, our analysis could stop here. Given the clarity of the statutory language, there is no need to resort to other indications of legislative intent. (*Kobzoff v. Los Angeles County Harbor/UCLA Medical Center* (1998) 19 Cal.4th 851, 861 ["If the plain language of a statute is unambiguous, no court need, or should, go beyond that pure expression of legislative intent."].) But because at least three federal district courts have relied on the legislative history to conclude—incorrectly, in our view—that the Legislature intended attorney fees awards be available only to prevailing plaintiffs, we address it here. (See *Physician's Surrogacy, Inc. v. German* (S.D. Cal. 2018) 311 F.Supp.3d 1190, 1195 [citing *Swearingen v. HAAS Automation, Inc.* (S.D. Cal. Apr. 14, 2010, No. 09cv473-BTM (BLM)) 2010 WL 1495204, at *2 (*Swearingen*); *Facebook, Inc. v. Power Ventures, Inc.* (N.D. Cal. Aug. 8, 2017, No. 08-CV-05780-LHK) 2017 WL 3394754, at *6; *OptiStreams, Inc. v. Gahan* (E.D. Cal. Mar. 28, 2006, No. CV-F-05-0117 REC SMS) 2006 WL 829113, at *10].)

Hay contends the federal district courts correctly concluded that (1) the Legislature's deletion of the phrase "prevailing party" from the original statutory language demonstrates its intent that attorney fees awards be limited to prevailing plaintiffs, and (2) the legislative history supports this interpretation of the statute. We are not persuaded.

First, the deletion of the "prevailing party" language does not logically support a conclusion that fees may only be awarded to prevailing plaintiffs. Even as amended, the statutory language remained neutral as between plaintiffs and defendants. If anything, the elimination of restrictive language from a statute generally implies that the statutory scope has been expanded,

13

not narrowed. (See, e.g., *Garrett v. Young* (2003) 109 Cal.App.4th 1393, 1404 [Legislature's deletion of previous references meant the legislation was "to apply more broadly"].) And again, if the Legislature intended to restrict fee awards to prevailing plaintiffs, it could easily have done so by changing the phrase "prevailing party" to "prevailing plaintiff" or "prevailing claimant." (See *Stiglitz, supra*, 60 Cal.4th at p. 632.)

Second, we disagree with the federal district courts that the legislative history reveals a clear intent to allow fee awards under section 502 only for plaintiffs. According to the *Swearingen* court, the statement in the Senate Judiciary Committee report that the "prevailing parties" language was removed in response to concerns it "might chill desired civil enforcement" proves it was the Legislature's intent to limit the recovery of attorney fees to prevailing plaintiffs. (*Swearingen, supra*, 2010 WL 1495204, at p. *3, quoting Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2727 (1999–2000 Reg. Sess.) as amended Aug. 7, 2000, p. 5.) Though this provides some support for the idea that there was a fear section 502 claims might be chilled by the prospect of being forced to pay attorney fees to a prevailing defendant, it is not an explicit statement that the Legislature intended to prohibit such an award. At most, this statement implies only that the Legislature *may* have intended to limit fees to prevailing plaintiffs—even though it did not say so explicitly in the Senate Judiciary Committee Report and did not include any such limitation in the neutral language of the amended statute.

By contrast, other indicators of legislative intent explicitly stated a contrary understanding more in line with the statutory language. The Legislative Counsel's Digest for Assembly Bill No. 2727 stated that "any party" may recover fees. (Legis. Counsel's Dig., Assem. Bill No. 2727 (1999–2000 Reg. Sess.).) Although the Legislative Counsel's summaries, like

14

legislative committee reports, are not binding, "they are entitled to great weight." (*Jones v. Lodge at Torrey Pines Partnership* (2008) 42 Cal.4th 1158, 1170.) The Supreme Court has also explained that " '[i]t is reasonable to presume that the Legislature amended [the statute at issue] with the intent and meaning expressed in the Legislative Counsel's digest.' " (*Ibid.*, quoting *People v. Superior Court of Orange County* (1979) 24 Cal.3d 428, 434.)

Similarly, the Office of Criminal Justice Planning submitted a contemporaneous enrolled bill report to the Governor recommending his signature and stating that section 502 as amended "would allow the award of attorney fees *to any party*." (Office of Criminal Justice Planning, Enrolled Bill Rep. on Assem. Bill No. 2727 (1999–2000 Reg. Sess.), prepared for Governor Davis (Aug. 31, 2000) p. 1, italics added.) Enrolled bill reports are generally prepared within days of a statute's passage by governmental departments charged with informing the Governor about the statute so that the Governor can decide whether to sign it, "thereby completing the legislative process." (*Whitley, supra*, 50 Cal.4th at p. 1219, fn. 3.) Thus, the Supreme Court has explained that such reports can be instructive as to the Legislature's intent, purpose, and understanding in enacting a statute. (*Ibid.*)

Moreover, as we have noted, the same Legislature that enacted Assembly Bill No. 2727 also passed Assembly Bill No. 2232, which would have authorized a fee award to any "prevailing party." (Stats. 2000, ch. 634, § 1.) Assembly Bill No. 2727 apparently took effect over Assembly Bill No. 2232 only because it was enacted first. The fact that both bills passed the Legislature in the same session further undermines any inference that the Legislature intended to limit the neutrally worded fees provision of Assembly Bill No. 2727 only to prevailing plaintiffs.

In sum, the legislative history viewed as a whole does not defeat our plain reading of the statute: it allows fees to any party. We therefore conclude that section 502 permits an award of attorney fees to a prevailing defendant.

B. *The Trial Court Applied the Correct Legal Standard in Deciding the Fees Motion*

Having determined that section 502 permits the trial court to grant attorney fees to a prevailing defendant, we must next resolve the parties' dispute over what standard applies when the court decides whether to award fees. We review this question de novo. (See *Whitley, supra*, 50 Cal.4th at pp. 1213–1214.)

Marinkovich contends the trial court erred in determining that, even if defendants are permitted to recover attorney fees under section 502, they may only do so where the plaintiff's claim was frivolous or abusive. This is referred to as an "asymmetrical" standard, as it "constrains the trial court's discretion to award attorney's fees to a prevailing defendant" but not to a prevailing plaintiff. (*Travis, supra*, 14 Cal.5th at p. 414.) According to Marinkovich, the trial court should have instead employed a symmetrical standard when assessing whether he was entitled to fees because the policy considerations that generally support the use of an asymmetrical standard were not present here. Hay, on the other hand, argues the trial court properly applied an asymmetrical standard.

The Supreme Court recently addressed this very issue, although in connection with a different statute. The court framed the question as "whether a trial court's discretion to award fees to a prevailing defendant is coextensive with its discretion to award fees to a prevailing plaintiff" where "[t]he text of the statute does not specify the standard that should govern an

award of fees to either prevailing party." (*Travis, supra*, 14 Cal.5th at p. 414.) The court concluded that "to effectuate the purpose of encouraging private litigation enforcing the Political Reform Act," it must interpret the fees provision of the statute to impose an asymmetrical standard. (*Ibid*.) In other words, a defendant that prevails on claims asserted against it under the Political Reform Act should not be awarded fees " 'unless the court finds the action was objectively without foundation when brought, or the plaintiff continued to litigate after it clearly became so.' " (*Id*. at p. 415.)

As we will explain, we agree with Hay that the reasoning of *Travis* applies to section 502 claims.

### 1. *Legal Principles*

The Supreme Court explained in *Travis* that California follows the American rule regarding attorney fees: litigants are generally responsible for paying their own fees, unless a statute or agreement provides otherwise. (*Travis, supra*, 14 Cal.5th at p. 417.) There, the statute providing otherwise was Government Code section 91003, which stated that in claims under the Political Reform Act, the "court may award to a plaintiff or defendant who prevails that party's costs of litigation, including reasonable attorney's fees." (Gov. Code, § 91003, subd. (a).) The court noted that the United States Supreme Court had construed a similarly worded fee statute as imposing an asymmetrical standard in *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n* (1978) 434 U.S. 412 (*Christiansburg*), a case that addressed whether prevailing defendants are entitled to attorney fees based on the same standard as prevailing plaintiffs under Title VII of the Civil Rights Act of 1964 (Title VII) (42 U.S.C. § 2000e et seq.).

In determining what standard should govern a fee award to a successful defendant where the statute is silent on the issue, the

17

*Christiansburg* court emphasized the policy and equitable considerations underlying Title VII claims. First, a private plaintiff in a Title VII action vindicates a policy Congress considered to be a high priority. (*Christiansburg, supra*, 434 U.S. at p. 418.) Second, when a court awards fees to a prevailing plaintiff in a Title VII case, "it is awarding them against a violator of federal law." (*Ibid*.) "These two 'strong equitable considerations counseling an attorney's fee award to a prevailing Title VII plaintiff . . . are wholly absent in the case of a prevailing Title VII defendant.' " (*Travis, supra*, 14 Cal.5th at p. 418.) Moreover, to impose fees against plaintiffs "simply because they do not finally prevail would substantially add to the risks inhering in most litigation and would undercut the efforts of Congress to promote the vigorous enforcement of the provisions of Title VII." (*Christiansburg*, at p. 422.) Therefore, the court concluded, a Title VII plaintiff should not be required to pay an opponent's attorneys' fees unless the "claim was frivolous, unreasonable, or groundless, or [] the plaintiff continued to litigate after it clearly became so." (*Ibid*.)

Two Court of Appeal decisions subsequently applied the *Christiansburg* standard to requests for attorney fees under the Political Reform Act. (*People v. Roger Hedgecock for Mayor Com* (1986) 183 Cal.App.3d 810; *Cmty. Cause v. Boatwright* (1987) 195 Cal.App.3d 562.) Both concluded that an asymmetrical fee standard was necessary to encourage private enforcement of the statute, which is its primary purpose. (*Travis, supra*, 14 Cal.5th at pp. 418–421.) The Court of Appeal in *Travis* disagreed with those two decisions, stating that the United States Supreme Court "had 'considerably limited' the scope of the *Christiansburg* standard" in a subsequent case, *Fogerty v. Fantasy, Inc.* (1994) 510 U.S. 517 (*Fogerty*). (*Travis*, at p. 421.) Based on its view that the fee provision in the Political Reform Act resembled

18

the one in *Fogerty* more than the one in *Christiansburg*, the *Travis* Court of Appeal determined that prevailing plaintiffs and prevailing defendants should be treated alike under the Political Reform Act. (*Ibid.*)

The Supreme Court disagreed, concluding the Court of Appeal's reliance on *Fogerty* was misplaced. (*Travis, supra*, 14 Cal.5th at p. 421.) *Fogerty* involved a prevailing defendant "in the distinct context of a private copyright dispute" brought under the Copyright Act. (*Ibid.*) There, the United States Supreme Court "concluded that the goals and objectives of the Copyright Act differed from those underlying the Civil Rights Act of 1964 and thus warranted applying a different standard for awarding attorney's fees to prevailing defendants." (*Ibid.*) The Copyright Act "serves the purpose of enriching the general public through access to creative works" and seeks to ensure that "the boundaries of copyright law [are] demarcated as clearly as possible." (*Fogerty, supra*, 510 U.S. at p. 527.) Therefore, "a successful defense of a copyright infringement action may further the policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim by the holder of a copyright." (*Ibid.*)

The same is not true of the Political Reform Act. (*Travis, supra*, 14 Cal.5th at p. 422.) Instead, "[m]aximizing the number of meritorious suits through the Political Reform Act's private enforcement mechanism is of primary importance." (*Id.* at p. 423.) A rule allowing defendants to recover their attorney fees whenever they prevail would discourage a large number of plaintiffs who may have colorable claims but are not willing to risk paying steep fees if they ultimately do not succeed. (*Ibid.*)

The Supreme Court in *Travis* also considered a number of other statutes permitting fee awards for prevailing defendants to which courts applied the *Christiansburg* standard, including: (1) the California Fair

Employment and Housing Act (§ 12900 et seq.) (*Williams v. Chino Valley Independent Fire Dist.* (2015) 61 Cal.4th 97, 110 (*Williams*); (2) the federal Clean Water Act (*Browder v. City of Moab* (10th Cir. 2005) 427 F.3d 717, 723); (3) the Real Estate Settlement Procedures Act (*Lane v. Residential Funding Corp.* (9th Cir. 2003) 323 F.3d 739, 748); (4) the Americans with Disabilities Act (*Bercovitch v. Baldwin Sch., Inc.* (1st Cir. 1999) 191 F.3d 8, 10–11); (5) the Endangered Species Act (*Marbled Murrelet v. Babbitt* (9th Cir. 1999) 182 F.3d 1091, 1095); and (6) the Voting Rights Act (*Comm'rs Court of Medina County v. United States* (D.C. Cir. 1982) 683 F.2d 435, 439).  (*Travis, supra*, 14 Cal.5th at p. 426.)  Each of these cases involved a public law "designed to be enforced by individuals acting as private attorneys general" or another similar context where "plaintiffs would be discouraged from bringing colorable claims to enforce laws for the benefit of the public if they faced the prospect of paying a defendant's attorney's fees whenever their suit ultimately proved unsuccessful."  (*Id*. at pp. 426–427.)  The *Travis* court thus found that the Political Reform Act was more like these statutes than the Copyright Act and concluded the *Christiansburg* standard applies to discretionary awards of attorney fees to prevailing defendants under the Political Reform Act.  (*Travis*, at p. 427.)

 2. *Analysis*

 To determine whether this case is more similar to *Christiansburg* or *Fogerty*, we must examine the goals and objectives of section 502.  (*Travis, supra*, 14 Cal.5th at p. 422.)  Subdivision (a) of section 502 provides that the Legislature's intent in enacting the statute was "to expand the degree of protection afforded to individuals, businesses, and governmental agencies from tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems."  (§ 502, subd. (a).)  According

20

to the Legislature, "the proliferation of computer technology has resulted in a concomitant proliferation of computer crime," and protecting "the integrity of all types and forms of lawfully created computers, computer systems, and computer data is vital" to protect the privacy of individuals and the well-being of financial institutions, business concerns, governmental agencies, and others. (*Ibid.*) The Legislature thus created a private right of action allowing victims of section 502 violations to seek compensatory damages, injunctive relief or other equitable relief, and punitive damages, in addition to any other civil remedy available to address such violations. (§ 502, subd. (e)(1) & (4).)

The Legislature's 2000 amendment dispensing with the criminal conviction prerequisite for filing civil actions under section 502 underscores the point. As discussed, the legislative history demonstrates that the amendment was intended to remedy a lack of enforcement by prosecutors by encouraging private enforcement of the law. (See Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2727 (1999–2000 Reg. Sess.) as amended Aug. 7, 2000, pp. 4–5.) Similar to the policies underlying the private attorney general doctrine, the Legislature recognized that because the public enforcement of an important right affecting the public interest was inadequate, private enforcement was necessary. (See *Whitley, supra*, 50 Cal.4th at p. 1215.)

This case is unlike *Fogerty*, where the United States Supreme Court emphasized that a successful defense of a copyright action could further the policy goals of the Copyright Act every bit as much as the successful prosecution of an infringement claim. (*Fogerty, supra*, 510 U.S. at pp. 526–527.) Marinkovich disputes this, contending that section 502 is like the Copyright Act in that it demonstrates an intent by the Legislature to protect both potential plaintiffs and potential defendants. At oral argument, counsel

for Marinkovich argued that because a portion of section 502 declares the protection of computer data is vital "to the well-being of financial institutions, business concerns, governmental agencies, and others within this state *that lawfully utilize those computers, computer systems, and data*" (§ 502, subd. (a), italics added), the statute was designed to prevent unauthorized access *and* to protect authorized use by defendants. We see it differently. We read this part of the statute as further explaining why the Legislature believed that expanding protection of computer data against unauthorized access was vital. Nothing in the statute suggests that a successful defense of a section 502 claim would further the policy goal of data protection. Instead, a successful defense of a section 502 claim "merely confirms that the action lacks merit." (See *Travis, supra*, 14 Cal.5th at p. 424.) We therefore agree with Hay that section 502 claims are more similar to those claims in cases where courts have employed the asymmetrical standard than claims brought under the Copyright Act.

In light of the statute's objectives and goals, and to effectuate the purpose of encouraging private litigation under section 502, we conclude that a prevailing defendant should not be awarded attorney fees unless the court finds that the action was objectively without foundation when brought, or the plaintiff continued to litigate it after it clearly became so. (See *Travis, supra*, 14 Cal.5th at p. 415.) A contrary rule would chill private enforcement of the statute and thus undermine its purpose. (*Id.* at p. 418.)

Marinkovich resists this conclusion by attempting to distinguish those claims where courts have imposed an asymmetrical standard from section 502 claims and arguing that the policy considerations supporting the asymmetrical standard do not apply here. He contends that, unlike the Title VII plaintiff in *Christiansburg* and the Political Reform Act plaintiff in

22

*Travis*, the section 502 plaintiff here brought an action seeking to vindicate an individual grievance rather than a collective wrong.  Marinkovich emphasizes language in *Travis* stating that the United States Supreme Court and the Supreme Court of California have adopted the asymmetrical standard only in cases "involving enforcement of *important public rights*." (*Travis, supra*, 14 Cal.5th at p. 425, italics added.)  He argues that section 502 does not involve such a public right but rather "primarily seeks to enforce private remedies afforded by state law."

We are not persuaded.  First, as we have explained, the Legislature made clear that its intent in enacting section 502 was to address the proliferation of computer crime and protect individuals, businesses, and governmental agencies.  (§ 502, subd. (a).)  Its amendment of the statute in 2000 was meant to encourage private enforcement of the statute given the lack of enforcement by prosecutors.  (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2727 (1999–2000 Reg. Sess.) as amended Aug. 7, 2000, pp. 4–5.)  The statute also expressly states that anyone who commits the prohibited acts "is guilty of a *public* offense" (§ 502, subd. (c), italics added), indicating that a section 502 case involves an issue of public importance warranting the imposition of the asymmetrical fee standard.  (*Travis, supra*, 14 Cal.5th at p. 425.)  The text and legislative history of the bill thus support our conclusion that the asymmetrical standard is appropriate here.

Second, just because a section 502 plaintiff has an "individual grievance" does not negate the public aspect of the offense.  (See *Travis, supra*, 14 Cal.5th at p. 424, fn. 6 ["Even when a plaintiff does have a distinct stake in the Political Reform Act enforcement action, a prevailing defendant's interests can be protected by an award of fees if the action is determined to be frivolous."].)  No one could credibly argue that a victim of discrimination

23

under Title VII or the Fair Employment and Housing Act does not have an individual grievance. Yet the United States Supreme Court and California Supreme Court have still found it appropriate to impose an asymmetrical standard in those cases. (See *Christiansburg, supra*, 434 U.S. at p. 422; *Williams, supra*, 61 Cal.4th at p. 112.) We reach the same conclusion here.

C. *The Trial Court Did Not Abuse Its Discretion in Denying Fees*

Marinkovich's final contention is that the trial court abused its discretion in denying his request for attorney fees because, among other reasons, the lawsuit was frivolous and abusive.[4] To establish he was entitled to fees, Marinkovich was required to show that Hay's action was either objectively without foundation when brought or that she continued to litigate after it clearly became so. (*Travis, supra*, 14 Cal.5th at p. 427; *Williams, supra*, 61 Cal.4th at p. 115.) We review the order denying attorney fees for abuse of discretion. (*Whitley, supra*, 50 Cal.4th at p. 1213.) The appropriate test of abuse of discretion is generally whether " 'the trial court exceeded the bounds of reason, all of the circumstances before it being considered. . . . When two or more inferences can reasonably be deduced from the facts, a reviewing court lacks power to substitute its deductions for those of the trial court.' " (*Bustos v. Global P.E.T., Inc.* (2017) 19 Cal.App.5th 558, 563.)

We conclude the trial court was well within the bounds of reason in finding Hay's section 502 claim was not frivolous. At trial, Hay testified at length about the private and personal nature of the data stored on her laptop. She testified that although she asked Marinkovich to help her with her hard drive backup, she never gave him permission to make a copy of her data or

---

[4] Because we conclude that the asymmetrical standard applies to section 502 claims, we do not address Marinkovich's argument regarding the other equitable factors that would be relevant to a symmetrical standard analysis.

take a copy home with him. CTI employee Juhasz testified that user "Dave M" had at some point created, and later deleted, a folder named "Emma's Old Hard Drive" on the company network server. Juhasz was unaware of any "Dave M" at the company other than David Marinkovich.

Marinkovich, on the other hand, testified that Hay was present when he brought his own external hard drive into her office, plugged it into her computer to back up her data, and then placed the external hard drive back into his backpack when the transfer was complete. He did not recall specifically discussing with Hay whether he had permission to take the backup copy of her data, but she knew he would be taking the backup drive with him. Marinkovich also points out that Juhasz testified that the folder he found named "Emma's Old Hard Drive" could have been created by someone else, and Juhasz could not specifically tie the folder to Marinkovich. Marinkovich denied saving Hay's backup to the company server and later deleting it.

This evidence supports the jury's finding that Marinkovich did not violate section 502, but it does not also compel the conclusion that the claim was objectively without foundation. To the contrary, it would be unreasonable to conclude Hay's claim was frivolous where it appears the claim had "some basis in fact." (*Cummings v. Benco Building Services* (1992) 11 Cal.App.4th 1383, 1389 (*Cummings*) [reversing award of attorney fees to prevailing defendant because lawsuit was not frivolous, unreasonable, or without foundation].)

The jury's special verdict further supports the trial court's conclusion that Hay's section 502 claim was not frivolous. As the trial court recognized, "the jury found in Plaintiff's favor on some of the Penal Code section 502 claim questions on the special verdict, as well as on the other causes of

action." Although the jury found Marinkovich had permission to copy and access the data, polling revealed that this finding was not unanimous—three of the 12 jurors believed Marinkovich acted without permission. The jury also found, seemingly inconsistently, that Marinkovich lacked justification to intrude on Hay's expectation of privacy. The lack of unanimity on the permission question under the section 502 claim, along with the jury's finding under the invasion of privacy claim that Marinkovich invaded Hay's privacy without justification, further demonstrates that Hay's claim was not objectively without foundation. "Instead, the case at bar appears to be a routine case in which the plaintiff merely failed to achieve success on her claim." (*Cummings, supra*, 11 Cal.App.4th at p. 1390.) We therefore conclude the trial court acted within its discretion when it denied Marinkovich's request for fees.

DISPOSITION

The judgment is affirmed. The parties shall bear their own costs on appeal.

BUCHANAN, J.

WE CONCUR:

IRION, Acting P. J.

RUBIN, J.

26