Filed 2/28/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| RACHEL MONIZ,<br><br>    Plaintiff and<br>    Respondent,<br><br>v.<br><br>ADECCO USA, INC.,<br><br>    Defendant and<br>    Respondent;<br><br>PAOLA CORREA et al.,<br><br>    Movants and Appellants. | A168481, A168872<br><br>(San Mateo County<br>Super. Ct. No. 17-CIV-01736) |

Rachel Moniz and Paola Correa filed separate suits against Adecco USA, Inc. (Adecco) alleging overlapping claims under the Private Attorney General Act of 2004 (PAGA) (Lab. Code,[1] § 2698 et seq.). PAGA allows aggrieved employees, acting as the agent of the state's labor law enforcement agencies, to bring an action against their employer to recover civil penalties for violations of the Labor Code. (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 81.) Moniz and Adecco settled their action, and in a previous appeal we held that Correa had standing as a PAGA plaintiff to challenge the fairness of that settlement by

---

[1] Undesignated statutory references are to the Labor Code.

moving to vacate the ensuing judgment and appealing the denial of that motion. (*Moniz v. Adecco USA, Inc.* (2021) 72 Cal.App.5th 56, 70–73 (*Moniz II*), disapproved in *Turrieta v. Lyft, Inc.* (2024) 16 Cal.5th 664, 710 (*Turrieta*).) We also agreed with Correa that the trial court erred in its analysis of the fairness of the settlement, so we reversed. (*Id.* at p. 89.)

Moniz and Adecco revised the settlement, and the trial court approved it over Correa's objections and awarded Moniz's counsel attorney's fees out of the settlement fund. The trial court denied Correa's request for a service award from the settlement fund and largely denied her request for an award of attorney's fees from the settlement in compensation for her work in her own suit. Correa once more appeals, arguing the trial court's analysis of the revised settlement was flawed in various respects. Correa and her counsel also argue that the denial of her request for attorney's fees must be reversed with the judgment, and Correa further argues specifically that the trial court erred in denying her request for a service award.

While this appeal was pending, the California Supreme Court decided *Turrieta, supra,* 16 Cal.5th at pages 708–710, which disapproved of our reasoning in *Moniz II* regarding Correa's standing. After reexamining the question of Correa's appellate standing in light of *Turrieta*, we conclude Correa and her counsel lack standing to challenge the judgment and the appeals therefore must be dismissed.

2

## BACKGROUND

Adecco provides temporary labor to a variety of companies, including Google. (*Moniz II*, *supra*, 72 Cal.App.5th at p. 65.) In March 2017, John Doe added Correa as a plaintiff in his suit in San Francisco Superior Court, captioned *Doe v. Google* (Super. Ct. S.F. City & County, 2016, No. CGC-16-556034), alleging that Google's and Adecco's confidentiality rules violated various Labor Code statutes. (*Moniz II*, at p. 65.) In April 2017, Moniz filed this PAGA action in San Mateo County Superior Court making similar allegations against Adecco. (*Id.* at pp. 65–66.) Moniz served Correa with a notice that the two cases involved the same parties, the same or similar claims, and the same or substantially identical transactions. (*Id.* at p. 66.)

Adecco demurred in both suits based on federal preemption. (*Moniz II*, *supra*, 72 Cal.App.5th at p. 66.) The San Mateo Superior Court overruled the demurrer, but the San Francisco Superior Court sustained it. (*Ibid.*) Adecco filed a petition to coordinate the two actions. (*Id.* at p. 66, fn. 3.) That petition was denied because of the different demurrer rulings. (*Ibid.*)

Correa and Doe appealed from the judgment in *Doe v. Google* and the denial of the petition to coordinate the two cases. (*Moniz II*, *supra*, 72 Cal.App.5th at p. 66 & fn. 3; *Doe v. Google* (2020) 54 Cal.App.5th 948, 952.) This court held that the coordination ruling was reviewable only via a writ petition, not by appeal. (*Doe*, at p. 970.) But we reversed the San Francisco

3

Superior Court's demurrer ruling and remanded for further proceedings. (*Id.* at pp. 970–971.)

While the appeal in *Doe v. Google* was pending, Correa moved to intervene in Moniz's suit. (*Moniz II*, *supra*, 72 Cal.App.5th at p. 66.) The trial court denied the motion, and Correa appealed. (*Ibid.*) We assumed without deciding that Correa had an interest sufficient for intervention. (*Id.* at p. 73, fn. 10.) We nonetheless affirmed the trial court's order because Correa had not shown that Moniz's representation was inadequate and the trial court had not abused its discretion in finding that the interests opposing intervention outweighed Correa's alleged interest in intervention. (*Moniz v. Adecco USA, Inc.* (February 11, 2020, A155474) [nonpub. opn.] (*Moniz I*); see *Moniz II*, at p. 66.)

The trial court approved a settlement Moniz reached with Adecco and allowed Moniz a service award and award of attorney's fees. (*Moniz II*, *supra*, 72 Cal.App.5th at pp. 67–70.) The trial court denied Correa's counsel's motion to intervene, as well as Correa's request for attorney's fees and an incentive payment. (*Id.* at p. 70.) After the trial court entered judgment, Correa moved for a new trial and to vacate the judgment. (*Ibid.*) The trial court denied those motions, and Correa appealed from the judgment and the denial of the postjudgment motions. (*Ibid.*)

In our opinion in those appeals in *Moniz II*, *supra*, 72 Cal.App.5th at pages 70–73, we began by analyzing whether Correa had standing to appeal as a party of record aggrieved by the judgment. We held that Correa became a party of record by

4

moving to vacate the judgment. (*Id.* at p. 71.) We recognized that Correa did not own a personal claim for PAGA civil penalties, but we concluded that Correa was aggrieved because she was deputized in her own action to prosecute Adecco's Labor Code violations on behalf of the state. (*Id.* at p. 73.) *Moniz II* concluded that "where two PAGA actions involve overlapping PAGA claims and a settlement of one is purportedly unfair, it follows that the PAGA representative in the separate action may seek to become a party to the settling action and appeal the fairness of the settlement as part of his or her role as an effective advocate for the state." (*Ibid.*) We disagreed with *Turrieta v. Lyft, Inc.* (2021) 69 Cal.App.5th 955, 967–968, affd. (2024) 16 Cal.5th 664, which had reached the opposite conclusion. (*Moniz II*, at pp. 72–73.) We went on to find that the settlement between Moniz and Adecco was unfair in one respect and therefore reversed the judgment. (*Id.* at pp. 87–89.)

On remand, Moniz filed a renewed motion to approve the same settlement. The trial court denied that motion. Moniz and Adecco then revised their settlement agreement, pursuant to which (as in the previous proposed settlements) Adecco would pay about $4.6 million in penalties, $1.5 million of which would go to Moniz's counsel for attorney's fees. In December 2022, Moniz filed a motion for approval of the revised settlement. Correa filed an opposition and objections. The trial court approved the settlement and deferred consideration of Moniz's request for an award of attorney's fees out of the settlement.

5

Correa and her counsel moved for an enhancement or service award of $10,000 and $1.16 million in attorney's fees, all to be paid out of the settlement amount. The trial court awarded Moniz's counsel $1.479 million in attorney's fees, awarded Correa $21,000 in attorney's fees, and denied Correa's request for an enhancement or service award. The trial court then entered judgment.

Correa and her counsel moved to vacate the judgment or for a new settlement hearing under Code of Civil Procedure sections 659, subdivision (a)(2) and 663a, subdivision (a)(2). The trial court denied the motion.

Correa and her counsel appealed from the judgment (A168841) and the denial of her post-trial motion (A168872). While these appeals were pending, the California Supreme Court issued its opinion in *Turrieta*, *supra*, 16 Cal.5th 664, 716, affirming the Court of Appeal decision with which we had disagreed in *Moniz II*. *Turrieta* also disapproved of *Moniz II*'s analysis of Correa's standing to appeal based on her status as a PAGA representative. (*Turrieta*, at pp. 708–710.)

## DISCUSSION

### I. PAGA overview

"The Legislature enacted PAGA in 2003 to address a perceived 'shortage of government resources to pursue enforcement' of the Labor Code. . . . Thus, 'the Legislature's purpose in enacting the PAGA was to augment' what the Legislature then viewed as a 'limited enforcement capability' of the [Labor Workforce and Development Agency (LWDA or

6

Agency)] 'by empowering employees to enforce the Labor Code as representatives of the Agency.' [Citation.]

"To achieve this purpose, PAGA, as it applies in this case, specifies that civil penalties recoverable by the LWDA 'may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to' specified procedures. (§ 2699, former subd. (a).)[2] This provision 'empowers' aggrieved employees to sue for 'civil penalties previously recoverable only by the Labor Commissioner.' [Citation.] For purposes of standing to bring a PAGA action, an 'aggrieved employee' is 'any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed.' (§ 2699, former subd. (c).) As here relevant, 'civil penalties recovered by aggrieved employees [are] distributed as follows: 75 percent to the [LWDA] . . . and 25 percent to the aggrieved employees.' (*Id.*, former subd. (i).)" (*Turrieta, supra*, 16 Cal.5th at p. 681.)

PAGA actions have "several important 'legal characteristics.' " (*Turrieta, supra*, 16 Cal.5th at p. 681.)

_____

[2] "[While this appeal was pending,] the Legislature enacted extensive amendments to the PAGA statutes. (Stats. 2024, ch. 44, § 1 [enacting Assembly Bill No. 2288, effective July 1, 2024]; *id.*, ch. 45, § 1 [enacting Senate Bill No. 92, effective July 1, 2024].) The amendments are not at issue and no party suggests they should apply here. Our discussion addresses versions of the PAGA statutes in effect throughout the litigation of this case, and we express no opinion on operation of the newly amended provisions."

" ' "[E]very PAGA action . . . is a representative action on behalf of the state." ' [Citation.] 'It is a dispute between an employer and the state,' in which the state alleges 'through its agents' — i.e., aggrieved employees — 'that the employer has violated the Labor Code.' [Citation.] It 'is an enforcement action between the LWDA and the employer, with the PAGA plaintiff acting on behalf of the government.' [Citation.] As such, a PAGA action 'functions as a substitute for an action brought by the government itself.' [Citation.]

"An aggrieved employee who files a representative PAGA action is asserting a 'claim[] belonging to a government agency' [citation] and 'represents the same legal right and interest as state labor law enforcement agencies — namely, recovery of civil penalties that otherwise would have been assessed and collected by' the LWDA [citation]. Thus, the employee-plaintiff sues 'as the state's authorized representative' [citation] — its ' "proxy or agent" ' [citation]. A PAGA plaintiff's 'status as "the proxy or agent" of the state [citation] is not merely semantic; it reflects a PAGA litigant's substantive role in enforcing [California's] labor laws on behalf of state law enforcement agencies.' [Citation.] 'The government entity on whose behalf the plaintiff files suit is always the real party in interest in the suit.' [Citation.] These legal characteristics make '[a] PAGA representative action . . . a type of qui tam action.' " (*Id.* at pp. 681–682, italics omitted.)

8

## II. Appellate standing

" 'A "lack of standing" is a jurisdictional defect.' [Citation.] When an appellant lacks standing, the appeal is subject to dismissal." (*In re D.M.* (2012) 205 Cal.App.4th 283, 294.)

"Because, as a general matter, 'only parties of record may appeal,' a person 'denied the right to intervene in an action ordinarily may not appeal from a judgment subsequently entered in the case.' [Citation.] 'Nevertheless,' a person denied intervention 'who is legally "aggrieved" by a judgment may become a party of record and obtain a right to appeal by moving to vacate the judgment pursuant to Code of Civil Procedure section 663. [Citations.] One is considered, "aggrieved" whose rights or interests are injuriously affected by the judgment. [Citations.] [The] interest " 'must be immediate, pecuniary, and substantial and not nominal or a remote consequence of the judgment.' " ' " (*Turrieta, supra,* 16 Cal.5th at pp. 710–711.)

Correa and her counsel became parties to the action by moving to vacate the judgment after the trial court approved the revised judgment. The only question, then, is whether Correa or her counsel is aggrieved by the judgment based on Moniz's settlement with Adecco. Because *Turrieta* recently dealt with precisely this question, we begin by reviewing that decision in detail.

### A. *Turrieta*

*Moniz II* held that a plaintiff in one PAGA action has standing to move to vacate a judgment in a second PAGA action with overlapping claims by virtue of the plaintiff's role as a

9

designated proxy of the state.  (*Moniz II*, *supra*, 72 Cal.App.5th at pp. 72–73.)  *Moniz II* reasoned that one PAGA plaintiff could challenge the fairness of the settlement of an overlapping PAGA action as part of the plaintiff's role as an effective advocate for the state's interests.  (*Id.* at p. 73.)  A five-justice majority of the California Supreme Court disagreed in *Turrieta*, concluding that a plaintiff's status as a representative of the state in one PAGA action does not authorize the plaintiff to intervene or move to vacate the judgment in a second, overlapping PAGA action. (*Turrieta*, *supra*, 16 Cal.5th at pp. 705, 708–712.)

　　　*Turrieta* began by considering PAGA plaintiffs' intervention power.  (*Turrieta*, *supra*, 16 Cal.5th at p. 683.)  The court had previously held that PAGA plaintiffs' authority as the state's representative did not include the power to assign PAGA claims the LWDA had authorized them to bring.  (*Id.* at p. 686; see *Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court* (2009) 46 Cal.4th 993, 1003.)  It had also previously held that the penalties a PAGA plaintiff may collect do not include amounts sufficient to recover underpaid wages, even though the Labor Commission can recover such amounts. (*Turrieta*, at p. 686; see *ZB, N.A. v. Superior Court* (2019) 8 Cal.5th 175, 182.)  These cases suggested to the *Turrieta* court that the description of a PAGA plaintiff as the state's proxy, representative, or agent did little to establish or define whether a PAGA plaintiff's authority from the state includes the power to intervene in a suit with overlapping claims.  (*Turrieta*, at pp. 685–686.)

To determine the scope of a PAGA plaintiff's authority as the state's representative, *Turrieta* first examined PAGA's statutory language. (*Turrieta, supra,* 16 Cal.5th at pp. 688–691.) *Turrieta* found nothing expressly allowing a PAGA plaintiff to intervene in overlapping actions. (*Id.* at p. 688.) *Turrieta* also said it was debatable whether the power to intervene was necessary to achieve the Legislature's objectives for PAGA and therefore impliedly granted in the statute, finding competing views on that question. (*Id.* at pp. 690–691.)

*Turrieta* then concluded that the broader statutory scheme suggested that intervention was "neither reasonably necessary to effectuate PAGA's purpose nor consistent with the Legislature's intent." (*Turrieta, supra,* 16 Cal.5th at p. 691.) It observed that PAGA requires notice of a complaint, proposed settlement, or judgment only to the LWDA and does not mention notice to other PAGA plaintiffs or anyone else. (*Id.* at p. 692.) PAGA only requires the LWDA and the trial court to review settlements, and the trial court must ensure that any settlement is fair. (*Id.* at pp. 692–693.) *Turrieta* contrasted the lack of requirement for notice to other PAGA plaintiffs with class action suits, where absent class members must be notified to satisfy due process. (*Id.* at p. 692, fn. 12.) " '[N]o similar due process concerns arise under PAGA because absent employees do not own a personal claim for PAGA civil penalties [citation], and whatever personal claims [they] might have for relief are not at stake.' (*Williams* [*v. Superior Court* (2017)] 3 Cal.5th [531,] 547, fn. 4.)" (*Ibid.*) *Turrieta* distinguished the approval by a trial court, which is

11

neutral and has no financial interest in PAGA litigation, from intervention by overlapping PAGA plaintiffs, who have a financial interest in disrupting settlements to recover attorney's fees. (*Id.* at pp. 702–703.)

The *Turrieta* court found unpersuasive various arguments that review by the LWDA or trial court was insufficient. (*Turrieta*, 16 Cal.5th at pp. 693–698.) It noted that the state's enforcement actions have primacy over private efforts under PAGA, the Legislature intended PAGA actions to provide additional revenue to enable the LWDA to review settlements, and PAGA has evolved over time to expand the LWDA's involvement in the settlement of PAGA actions and judicial oversight of settlements. (*Id.* at pp. 694–698.) *Turrieta* also noted that the Legislature had demonstrated a concern with the difficulty of litigating PAGA suits. (*Id.* at pp. 698–699.) The Supreme Court concluded that allowing multiple PAGA plaintiffs to intervene in each other's suits would implicate concerns about making PAGA litigation more difficult, since multiple proxies with multiple lawyers would attempt to represent the same real party in interest—the state. (*Id.* at p. 699.) This would raise questions about which plaintiff would control and dictate the litigation and settlement process, whether all plaintiffs would have equal authority, whether one could unilaterally settle on behalf of the state without the agreement of or in the face of opposition from other plaintiffs, and whether all plaintiffs could recover attorney's fees and costs under PAGA's attorney's fees provision. (*Ibid.*) *Turrieta* found no guidance on these questions,

12

in PAGA or in the statutes or judicial decisions regarding intervention generally.  (*Id.* at pp. 699–700.)  Various other qui tam statutes that *Turrieta* examined allowed for intervention only by multiple public plaintiffs, not private plaintiffs, and provided extensive and detailed statutory guidance for the intervention they did permit.  (*Id.* at pp. 700–701.)

Turrieta stated expressly that it was not deciding whether a PAGA plaintiff could have a personal interest in an overlapping suit that might support the "interest" requirement for intervention under Code of Civil Procedure section 387.  (*Turrieta, supra,* 16 Cal.5th at p. 684 & fn. 6.)  Two of the five justices in the majority underscored this caveat in a concurrence.  (*Turrieta, supra,* 16 Cal.5th at p. 717 (conc. opn. of Kruger, J., joined by Groban, J.).)  *Turrieta* also made clear that it was not holding that PAGA barred or precluded intervention by a plaintiff in an overlapping suit.  (*Id.* at p. 705, fn. 21.)  Rather, *Turrieta* held only that PAGA did not give PAGA plaintiffs any authority to intervene in overlapping suits.  (*Ibid.*)

After disapproving *Moniz II*'s analysis and conclusions regarding standing (and distinguishing two other Court of Appeal cases), *Turrieta* then turned to the issue here, concerning whether a plaintiff in an overlapping PAGA suit has authority to move to vacate a settlement judgment and then appeal that denial.  (*Turrieta, supra,* 16 Cal.5th at pp. 707–712.)  The court concluded that a PAGA plaintiff's status as the state's deputized representative did not provide such authority "for essentially the same reasons" that it did not support intervention.  (*Id.* at

13

p. 711.)  PAGA did not expressly provide such authority, and "concluding that this power is necessarily implied in a PAGA plaintiff's authority to commence and prosecute a PAGA action on the state's behalf would be inconsistent with the statutory scheme as a whole," given that the Legislature provided only for oversight by the courts and LWDA.  (*Ibid.*)  "The omission of any mention or suggestion of oversight by anyone else is significant given the unanswered questions that would arise from" allowing a plaintiff in an overlapping PAGA suit to move to vacate a judgment, "which could leave courts faced with multiple motions to vacate and multiple appeals in a single PAGA action, filed by multiple PAGA plaintiffs and their counsel, all purporting to represent the interests of the same client:  the state."  (*Ibid.*)  "Nothing in PAGA's text, the statutory scheme, or the legislative history suggests the Legislature understood or intended an aggrieved employee's authority to commence and prosecute a PAGA action on the state's behalf to include the power to move to vacate a judgment obtained by another aggrieved employee — representing the same state interest — after a proposed settlement has been submitted for review to both the trial court and the LWDA, and the court has determined that the proposed settlement 'is fair to those affected.' "  (*Ibid.*)  Nor did Code of Civil Procedure section 663, which allows "the party aggrieved" by a judgment to move to vacate it, say anything about "the authority of someone other than 'the party aggrieved' to file such a motion on the aggrieved party's behalf."  (*Turrieta*, at p. 712.)

14

### B. Law of the case

Correa seeks to avoid any inquiry into *Turrieta*'s effect on her standing by arguing that our holding in *Moniz II* that she has standing is law of the case here. "The law of the case doctrine generally 'precludes a party from obtaining appellate review of the same issue more than once in a single action.' [Citation.] It is well settled, however, that the doctrine may be disregarded where the 'controlling rules of law have been altered or clarified by a decision intervening between the first and second appellate determinations.' " (*Truck Ins. Exchange v. Kaiser Cement & Gypsum Corp.* (2024) 16 Cal.5th 67, 87, fn. 6.) Our Supreme Court's decision in *Turrieta*, which intervened between *Moniz II* and this appeal, altered or clarified the controlling rule of law for when one PAGA plaintiff has standing to move to vacate the judgment in an overlapping PAGA suit. Moreover, *Turrieta* expressly disapproved of *Moniz II*'s analysis of this issue. (*Turrieta, supra,* 16 Cal.5th at pp. 708–710.) *Moniz II*'s analysis is therefore not law of the case.

### C. Personal interests

More significantly, Correa tries to distinguish *Turrieta*, relying on the express caveat in the majority and concurring opinions that the court was not addressing whether an aggrieved employee could have the right to intervene to vindicate a personal interest. (*Turrieta, supra,* 16 Cal.5th at p. 684 & fn. 6; *id.* at p. 717 (conc. opn. of Kruger, J.).) She asserts that she moved to vacate the trial court's orders and judgment on her own behalf. She then argues that a personal interest need not be an

15

ownership interest and can be any " 'interest recognized by law.' " (*Cesar V. v. Superior Court* (2001) 91 Cal.App.4th 1023, 1034.) Correa asserts that as an aggrieved employee, whom PAGA defines as "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed" (§ 2699, former subd. (c)), she has such a personal interest.

Correa lists interests arising from her own suit that she believes support her standing to move to vacate Moniz's settlement. First, she points to her nonwaivable right to bring a PAGA claim. (*Iskanian v. CLS Transportation Los Angeles LLC* (2014) 59 Cal.4th 348, 383, abrogated on other grounds by *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. 639, 662 and *Quach v. California Commerce Club, Inc.* (2024) 16 Cal.5th 562, 569). Second, as an aggrieved employee she stands to collect her share of 25 percent of the civil penalties recovered in any action. (§ 2699, former subd. (i).) Third, she can collect her attorney's fees and costs if she prevails. Fourth, she could obtain a prevailing party determination insulating her from having to pay Adecco's costs. Fifth, she might be able to collect a service award. And finally, she can remediate the Labor Code violations that continue to affect her. She claims Moniz's settlement jeopardizes these interests because Adecco will claim that the settlement with Moniz is res judicata of her own suit. (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 986 [PAGA judgment binds state labor law enforcement agencies and nonparty aggrieved employees].)

16

Preliminarily, we are not convinced that Correa moved to vacate the judgment in her personal capacity rather than on behalf of the state. Her notice of motion is ambiguous, stating that she was moving to vacate the judgment but without specifying in what capacity she was bringing the motion. But her briefing in support of her motion stated that she, "the PAGA Representative in an overlapping case, is aggrieved by the Court's decision and judgment approving the settlement," cited to *Moniz II*, and added that "Correa's counsel is also aggrieved."[3] This suggests she brought her motion in her capacity as a PAGA plaintiff acting on behalf of the state, as in *Moniz II*, not in her personal capacity as an aggrieved employee.

Correa's failure to mention any personal interest is not surprising, given that we had decided in *Moniz II* that status as a PAGA plaintiff acting on behalf of the state was sufficient. (*Moniz II*, *supra*, 72 Cal.App.5th at pp. 72–73.) The Supreme Court had already granted review in *Turrieta* when Correa filed her motions (*Turrieta v. Lyft, Inc.*, *supra*, 69 Cal.App.5th 955, review granted Jan. 5, 2022, S271721), but Correa could not have known that *Moniz II* would be disapproved on this point. Even if we could find that Correa had forfeited the right to assert a personal interest, then, in these circumstances we would exercise

---

[3] We need not decide here whether Correa's counsel has an independent personal interest sufficient to confer standing to appeal the award of attorney's fees. Even if her attorneys had such an interest, they have not asserted it. Correa and her counsel do not challenge the amount of the trial court's fee award but rather argue only that the fee award must be reversed with the judgment because the settlement was unfair.

17

our discretion to disregard any forfeiture because Correa's arguments on appeal are purely legal. (*Ramirez v. Department of Motor Vehicles* (2023) 88 Cal.App.5th 1313, 1335 [appellate court has discretion to consider forfeited arguments that raise pure questions of law].)

However, the fact that Correa's new personal interest theory is an attempt to repackage the same facts in a different legal wrapper points to a more fundamental problem with her arguments. *Turrieta* said it was not addressing the question of whether a PAGA plaintiff or aggrieved employee could have a personal interest sufficient to support intervention or holding that PAGA barred intervention. (*Turrieta, supra*, 16 Cal.5th at pp. 684 & fn. 6, 705, fn. 21; *id.* at p. 717 (conc. opn. of Kruger, J.).) Although the Supreme Court did not say so explicitly, we may assume the same caveat applies to its holding regarding standing to vacate the judgment, since the court said that its reasoning for both questions followed the same track. (*Turrieta, supra,* 16 Cal.5th at p. 711.) But the personal interests she asserts arise by virtue of PAGA itself and are mostly derivative of her representation of the state's interest as a PAGA plaintiff, so those interests are subject to the same analysis and lead to the same outcome as in *Turrieta.*

As the Supreme Court's pre-*Turrieta* cases make clear, PAGA is fundamentally a law enforcement action, a form of qui tam suit in which a private plaintiff represents the state in the enforcement of various statutes. (See *Turrieta, supra*, 16 Cal.5th at pp. 681–682, citing, inter alia, *Iskanian v. CLS Transportation*

*Los Angeles, LLC*, *supra*, 59 Cal.4th at pp. 382, 386–388; *Kim v. Reins International California, Inc.*, *supra*, 9 Cal.5th at pp. 80–81, 86; *Arias v. Superior Court*, *supra*, 46 Cal.4th at p. 986].) The civil penalties for violations of such statutes flow to the state, except that PAGA diverts a portion of them to the aggrieved employees. (§ 2699, former subd. (i).) As Correa acknowledges, many of the Labor Code sections have no private right of action (*Kim*, at p. 89), so PAGA provides the only means by which aggrieved employees can collect anything for violations of such statutes. PAGA is "simply a procedural statute" that does not create property rights, so a PAGA plaintiff cannot assign a claim for statutory penalties. (*Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court*, *supra*, 46 Cal.4th at p. 1003; see also *Williams v. Superior Court*, *supra*, 3 Cal.5th at p. 547, fn. 4.)

There is no substantive difference, then, between saying that a PAGA plaintiff has an interest to support intervention in an overlapping PAGA suit by virtue of being the state's proxy in a suit to recover 75 percent of the civil penalties in the overlapping action and saying that the plaintiff has an interest to support intervention by virtue of an interest in 25 percent of the civil penalties in the overlapping suit, a service award (assuming for the sake of argument that a prevailing PAGA plaintiff can collect such an award), entitlement to costs and attorney's fees, or protection from an opposing cost award. Either way, the same class of people will have an interest arising from the same law. Finding that Correa has standing based on the interests she here

19

asserts would entitle *every* PAGA plaintiff in an overlapping suit to intervene or move to vacate the judgment – which is exactly the opposite of what *Turrieta* concluded based on the PAGA plaintiff's status as representative of the state's interest. If a PAGA plaintiff could obtain standing to intervene or move to vacate in an overlapping suit merely by engaging in the semantic exercise of relabeling his or her interest arising from the statute as a private one rather than one as the state's proxy, *Turrieta*'s holding precluding intervention or vacatur solely by virtue of status as an overlapping PAGA plaintiff would have no effect. (Cf. *Turrieta, supra,* 16 Cal.5th at p. 682 ["A PAGA plaintiff's 'status as "the proxy or agent" of the state [citation] is not merely semantic; it reflects a PAGA litigant's substantive role in enforcing [California's] labor laws on behalf of state law enforcement agencies' "].)

Turrieta's reasoning suggests the Supreme Court would not countenance such a result. *Turrieta* first determined that PAGA's oversight provisions "suggest[] the Legislature neither envisioned nor intended" that PAGA plaintiffs would have the right as proxies of the state to intervene or move to vacate in overlapping PAGA suits. (*Turrieta, supra*, 16 Cal.5th at p. 692; *id.* at p. 711.) PAGA's oversight provisions no more support oversight by a PAGA plaintiff acting in a private capacity than they do one acting on behalf of the state. *Turrieta* also highlighted PAGA plaintiffs' financial interest in disrupting settlements in overlapping suits. (*Id.* at pp. 702–703.) PAGA plaintiffs acting in their private capacity have the same financial

20

interest. Both aspects of *Turrieta*'s analysis would therefore be meaningless if the Legislature all along intended to allow PAGA plaintiffs like Correa to intervene in overlapping suits simply by asserting a private interest in the penalties, service award, or attorney's fees they were seeking to recover — private interests that PAGA itself also created. It would be quite anomalous for the Legislature to tacitly reject the need for intervention or vacatur by overlapping plaintiffs to protect the state's interests in penalties under PAGA, as *Turrieta* concluded, while also tacitly accepting intervention or vacatur to protect plaintiffs' private interests in penalties, service award, and attorney's fees under the same statute.

*Turrieta*'s practical considerations relating to control of litigation by multiple parties and lawyers if a PAGA plaintiff could intervene or move for vacatur on behalf of the state apply equally to vacatur in a private capacity. (*Turrieta*, *supra*, 16 Cal.5th at pp. 699, 711.) Giving PAGA plaintiffs standing to move for vacatur by virtue of the purportedly personal interests Correa asserts would make PAGA litigation and settlements more difficult, contrary to the Legislature's express concern about the difficulty of litigating PAGA suits (see *id.* at p. 698). The history of this suit demonstrates precisely this risk, since Correa has consistently sought to disrupt Moniz's settlement. There is also a continued risk of overlapping representation of the same interests under a private interest theory of standing. All aggrieved employees stand to benefit from any civil penalties recovered in equal measure, and the judgment in a PAGA suit

21

binds all aggrieved employees. (*Arias v. Superior Court, supra,* 46 Cal.4th at p. 986.) Correa's assertedly private interest in penalties is therefore identical to and intertwined with the interest of Moniz and all other aggrieved employees. This raises unanswered questions about how trial and appellate courts should deal with "multiple motions to vacate and multiple appeals in a single PAGA action, filed by multiple PAGA plaintiffs and their counsel," all representing the same interests. (*Turrieta,* at p. 711.)

Correa's private interest theory would exacerbate these practical problems. Some of the interests Correa asserts rest on her status as an aggrieved employee rather than a PAGA plaintiff, such as her interest in PAGA penalties or remediating Labor Code violations. This means that all aggrieved employees would have the same interests and vacatur rights that Correa now asserts. If there is no indication the Legislature intended to allow the relatively few named plaintiffs in overlapping PAGA suits to move for vacatur, there is even less indication that the Legislature intended to allow every aggrieved employee affected by either suit to do so. Recognizing the standing of all aggrieved employees could vastly multiply the number of voices involved in PAGA litigation far beyond what *Turrieta* already found to be concerning. It would also create a bypass route around the requirement of notice to the LWDA before an aggrieved employee can bring a suit in the first place. (See § 2699.3, former subd. (a).) Any aggrieved employee could simply wait until someone else obtains express or tacit permission from the LWDA

to file a private suit and then insert himself or herself into the litigation via intervention or, if the employee was not satisfied with a settlement or verdict, through vacatur.

Correa cites to *Hernandez v. Restoration Hardware, Inc.* (2018) 4 Cal.5th 260, 273, which held that absent class members must intervene or move to vacate a judgment to challenge a class action settlement. Two justices of the Supreme Court found this comparison apt in *Turrieta* (as did we in *Moniz II*), but the *Turrieta* majority did not. (See *Turrieta*, *supra*, 16 Cal.5th at pp. 692, fn. 12, 703–704 [disagreeing with dissent's reliance on *Hernandez* and distinguishing PAGA suits from class actions]; *Moniz II*, *supra*, 72 Cal.App.5th at p. 71 [citing *Hernandez*].) If that were not sufficient reason on its own to reject Correa's comparison of PAGA to class action cases, *Turrieta* explained that the two types of suits, while facially similar, are fundamentally different in ways that matter here. The interest at stake in a PAGA action is that of the state, not the employees themselves. (*Turrieta*, at p. 692, fn. 12.) Thus, unlike a class action where an absent class member can opt out and represent his or her own individual interests, it is not possible to opt out of a PAGA suit. The penalties belong to the state and are shared with aggrieved employees by statute. (§ 2699, former subd. (i).) Any aggrieved employee can ultimately only attempt to recover

23

civil penalties on behalf of the state and all aggrieved employees, not purely individually.[4]

In her reply brief, Correa gamely attempts to show that the state interest and private interest theories are not substantively identical by identifying examples of individuals who would have standing under the state interest theory but not the private interest theory. She cites (1) a professional objector who files a PAGA notice with the LWDA and seeks to intervene or appeal without even filing a case, (2) a representative whose individual claim is time-barred and who cannot recover any share of the penalties (citing *Johnson v. Maxim Healthcare Services, Inc.* (2021) 66 Cal.App.5th 924, 930), and (3) a representative who was subject to a single violation and whose maximum potential recovery is less than $25. We give Correa credit for ingenuity, but these hypothetical scenarios do not convince us that the court that rejected state proxy standing in *Turrieta* would permit personal interest standing in other cases. Nothing in *Turrieta* suggests the court was concerned with professional objectors without actions of their own or plaintiffs with time-barred or de minimis recoveries. Rather, *Turrieta* was concerned about the Legislature's silence regarding oversight by PAGA plaintiffs,

---

[4] At oral argument, Correa maintained that she has a personal interest in obtaining her share of the 25 percent of the PAGA penalties. Because that interest is shared by all aggrieved employees, who must recover together or not at all, it does not meaningfully separate her from any other aggrieved employee. There is thus no way for an aggrieved employee to assert an interest that does not implicate the question of control of the overall litigation that *Turrieta* focused on.

PAGA plaintiffs' financial interest in disrupting settlements in order to recover attorney's fees, and intervention by multiple plaintiffs discouraging PAGA litigation by making it too difficult and unwieldy. These concerns extend to — and far beyond — the three hypothetical plaintiffs Correa imagines.

While Correa's argument falls within *Turrieta*'s caveat regarding personal interests, that caveat does not require or permit us to ignore *Turrieta*'s reasoning. We are mindful of this court's role in the judicial system and will not gut the holding in a decision by our high court based on semantics or technicalities like those raised by Correa, which have no material significance or distinction from *Turrieta*'s rationale. As we explained recently in analogous circumstances, the *Turrieta* court "may have wanted to leave open, as a precedential matter, the possibility that an argument could be made that" aggrieved employees could have standing based on their personal interests. (*Castellanos v. State of California* (2023) 89 Cal.App.5th 131, 152, affd. in part (2024) 16 Cal.5th 588.) But *Correa* has "failed to offer any argument to overcome the implications of [*Turrieta*'s] reasoning on this question, which we do not lightly cast aside." (*Id.* at p. 153.) Because *Turrieta*'s concerns about allowing intervention or vacatur by PAGA plaintiffs in overlapping suits as state proxies apply with the same force when those same individuals seek vacatur based on private interests under the same statute, we reach the same conclusion here as in *Turrieta*.

## DISPOSITION

Appeals Nos. A168481, A168872 are dismissed.

25

BROWN, P. J.

WE CONCUR:

STREETER, J.
SIMONDS, J. *

---

* Judge of the Superior Court of Sonoma County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

26

| | |
|---|---|
| Trial Court: | San Mateo County Superior Court |
| Trial Judge: | Hon. Marie S. Weiner |
| Counsel for Plaintiff and Respondent: | SCHNEIDER WALLACE COTTRELL KONECKY, Carolyn H. Cottrell, Ori Edelstein |
| Counsel for Defendant and Respondent: | JACKSON LEWIS, Mia D. Farber, Adam Y. Siegel, Scott P. Jang, Dylan B. Carp, Robert Yang |
| Counsel for Movants and Appellants: | BAKER CURTIS & SCHWARTZ, BAKER DOLINKO & SCHWARTZ, Chris Baker, Deborah Schwartz OUTTEN & GOLDEN, Jahan C. Sagafi, Molly Frandsen |